Mathews *v.* Massey.

SUSAN MATHEWS, *et als. v.* W. G. MASSEY, Adm'r., *et als.*

1. PAROL TRUST OF LAND. *Case in judgment.* A valid trust of land may be created by parol, and to satisfy the Statute of Frauds, it will be sufficient to show by written evidence, the existence of the trust. Thus, a husband bought land for his family, paying part cash, and executing notes for the balance. The vendor ratained the title, but verbally agreed with the husband, that, upon completion of the payments, he would convey the land to the wife for life, remainder in fee to the children. The purchase notes were paid, and the conveyance was made to the husband, as trustee, to carry out the original intention

   *Held,* That the parol agreement created a valid trust in favor of the beneficiaries, and that their equity was superior to that of a creditor of the husband and vendor, becoming such after completion of the payments, and before the execution of the conveyance.

   Case cited: Smith *v.* Bradley, 4 Sneed 305.

   Authorites cited: Hill on Trustees, 88; 3 Ves., 707; 5 Ves., 308; 12 Ves., 74; 1 J. C. R., 339; 4 Munf., 77.

2. SAME. *Same. When attorney may not compromise clients' suit.* An attorney has in general, no authority to enter into a compromise, without the sanction of his client, express or implied; therefore, when such creditor having attacked the conveyance above-mentioned, the solicitor, for the beneficiaries, by way of a compromise, agreed to a decree in which, contrary to the truth of the case, and without the knowledge or consent of his clients, an admission was made, amounting to a surrender of their claim to the land; whereupon, the beneficiaries filed this bill, repudiating the act of the solicitor, denying the admission so made, asserting their claim and asking to have the decree annulled.

   *Held,* that the action of the solicitor was unauthorized under the circumstances, and not having been ratified by his clients, the decree based upon it was a nullity; that complainants (except two of the adult children concluded by a *pro confesso* against them in the former suit) were entitled to the relief sought; that the wife took a life estate, and the children (with the exception mentioned) and the complainant

Mathews *v.* Massey.

in the former suit, (the creditor) were tenants in common of the remainder.

Authority cited : 1 Par. Con., 117 ; Walker *v.* Parker, 7. Cranch, 436.

FROM DAVIDSON.

Appeal from the Chancery Court. E. H. EAST, Chancellor.

JOHN REID for Massey.

M. M. BRIEN for Mathews.

NICHOLSON, C. J., delivered the opinion of the Court

This is a bill of review to set aside a decree made on the 23d of June, 1869, in the case of *Wm. G. Massey, adm'r.* v. *A. D. Eubank, et als.*, for error apparent on the face of the decree, and in the nature of a bill of review, for fraud in the procurement of the decree.

The questions to be determined arise upon the following facts : On the 1st of January, 1854, Kindred Ray sold to Henry W. Mathews a tract of land of eighty-four acres, at $30 per acre, receiving about one-third of the price in cash and property, and for the residue, Mathews took two notes, of $750 each, payable at one and two years. The wife of Mathews was a sister of Ray, and for that reason, Ray sold the land at a price below its value, by $5 an acre, and agreed with Mathews and his wife, that, when the purchase money was all paid, he would make the title

for the use and benefit of Mathews, wife and children. The sale was by parol, no bond or memorandum in writing having been made. The two notes were assigned by Ray and fully paid off by Mathews in 1864, but Ray did not make the title until August 8, 1866, when he executed a deed to Henry Mathews, in trust for his wife for life, and then to her children, in pursuance of the original parol agreement.

It does not appear that Mathews was indebted either in 1854, when the land was bought, or in 1864, when the purchase money was all paid up. But in July, 1865, he became the surety of Ray on several notes executed to John E. Gleaves, the intestate of W. G. Massey, for over $2,500. This liability was incurred about a year after the purchase money of the land was fully paid by Mathews, and about a year before the deed for the land was executed by Ray to Mathews, as trustee for his wife and children.

On the 30th of August, 1866, W. G. Massey, as administrator of Gleaves, took from Ray a conveyance in trust, of two tracts of land, Phineas Garret being trustee, to secure the payment of the several notes due by Ray and Mathews to Gleaves, after satisfying other preferred debts of Ray. On the 18th of April, 1867, without having enforced the deed of trust of Ray, and ascertained the balance due from Ray and Mathews, after applying the proceeds of the land so conveyed, toward the notes of Ray and Mathews, as provided by the trust deed, Massey filed his bill against Ray, Mathews and his wife, Susan, and her five children,

Albert J., Henry C., John H., Jeremiah G. and Mary E., for the purpose of having the deed of Ray to Mathews, as trustee for his wife and children, set aside for fraud, and that the land might be subjected to the debt of Ray and Mathews. He alleged that Mathews advanced and paid the consideration money to Ray, and when he was largely indebted, and that the deed was made to prevent his creditors from subjecting the same to the payment of his debts. He alleged that Ray was largely indebted to his intestates' estate at the time of the conveyance to Mathews, and had no right so to convey the land. He alleges that the conveyance was fraudulently made both by Ray and by Mathews. In this bill no allusion is made to the fact, that he had taken a deed of trust on Ray's land to secure the debts sought to be satisfied out of the land conveyed to Mathews in trust for his wife and children.

Ray answered, and insisted that Massey had no right to trouble his surety, Mathews, because he had been secured by the conveyance of his own lands.

Mathews and wife answered jointly, stating that, in 1854, Mathews purchased the land in controversy, of Ray, and paid for the same, with the understanding at the time the purchase was made, that the land should be conveyed in trust for Mathews' wife, and that the conveyance was made in August, 1866, according to the original contract; that they went into possession under the contract, which was by parol, in 1854, and have held it ever since, denying all fraud, and insist-

ing on the Statute of Limitations, and that Mathews had paid for the land in full, before the transaction between Ray and Gleaves, and that Ray was then holding the title only as trustee for Mathews' wife and children. She insists on her superior title to the land, as her husband was out of debt. They insist that Massey should exhaust his remedy against Ray's property, before disturbing their title.

This answer was only sworn to by Mathews, although it purports to be the joint answer of himself and wife. No exception was taken by Massey's solicitor to the failure of the wife to sign and waiver to the answer.

It appears that three of the children of Mathews and wife were adults, and two minors. One of the adults, Henry C, answered, and the bill was taken for confessed as to the other two adults. J. B. White was appointed guardian *ad litem*, and solicitor for the two minors, and filed an answer for them. He was also the solicitor of Ray, Mathews and wife, and H. C. Mathews, and filed all their answers.

The cause was heard on the 2nd of June, 1869, upon the answers of the parties and the order *pro confesso,* " and upon the agreement and admission of the parties."

Among other recitals in the decree is the following: "And it further appearing to the Court, that the defendant, Kindred Ray, conveyed to the defendant, Henry Mathews, by deed, a tract of land containing eighty-four acres, etc., and upon which the said Mathews had been living for ten years, in trust for the

benefit of his wife, (the defendant, Susan Mathews,) for her life, and at her death for the use and benefit of their children, etc.; that said trust deed was made on the 8th day of August, 1866 ; and it is admitted that said land was bought with the money of the defendant, Henry Mathews, and after the debt owing to complainant had been contracted," it was, therefore, held and decreed, that the deed was invalid.

It was further decreed, " with the consent of all parties," that Massey recover, etc., and directing the Clerk and Master first to sell the land embraced in Ray's deed of trust to Garrett, and if that failed to satisfy the debt of Ray and Mathews, then, that the eighty-four acres conveyed in trust for Mathews, wife and children be sold.

The present bill was filed by Susan Mathews and her five children against Massey, as administrator of Gleaves, and Ray and Mathews, to have the decree rendered on the 23rd of June, 1869, set aside and annulled, upon the ground that complainants had given no consent to the decree as entered, and had not admitted or authorized any one to admit for them, that the eighty-four acres of " land was bought with the money of Henry Mathews, and after the debt owing to the complainant had been contracted."   They, therefore, allege that the decree, based on this unauthorized consent and admission, was procured by fraud as to Mrs. Mathews and the adult children, and that it is erroneous on its face as to the two minors.

This bill was answered by Massey, and proof taken

on both sides, when the facts already stated were developed. Ray and Mathews failed to answer.

Upon the hearing of the cause, the Chancellor was of opinion that complainants were not entitled to relief, and dismissed their bill.

The proof in the case, and all the circumstances make it clear that Mr. White, while acting as solicitor for complainant, where the decree sought to be set aside was rendered, believed that it was to their interest that the land conveyed by Ray to Garrett, should be first sold, inasmuch as there was some reason for supposing that this land would pay off the debt sought to be enforced against the land claimed by complainants. As the pleadings stood, complainants could not have required Massey to resort first to the land conveyed to Garrett. There was, therefore, nothing fraudulent in procuring the decree to be so made by consent.

But the gravamen of the complaint in the present bill is, that the solicitor "admitted that the eighty-four acre tract was bought with the money of the defendant, Henry Mathews, and after the debt owing to complainant had been contracted." This admission was necessarily fatal to the defence, which Susan Mathews and her children had set up in their answer to Massey's bill. That defence was, that the land was purchased in 1854, when Henry Mathews was free of debt, and paid for by him in 1864, when he was still free of debt, and a year before the debt to Massey's intestate was contracted. The admission was in direct

contradiction of this defence, and was a surrender of the ground on which they claimed the land. The facts on which the defence rested were known to the solicitor, as he had drawn the answers in which the defence was made.

The proof in the present case fully sustains the facts relied on in their answer to Massey's bill, showing clearly that in 1854, Henry Mathews, by parol contract, bought the land in dispute, paying one-third down, and giving his two notes for $750 each, which he paid off fully in 1864, and that at the time of the purchase it was agreed, that, when the purchase money was paid, the title should be made for the benefit of Mathews' wife and children. It is further shown, that Ray, a brother of Mathews' wife, deducted $5 per acre from the price of the land, because it was bought as a home for his sister and her children, and because Mathews agreed to make the title to them, when the purchase money should be paid. It was shown, also, that, when the land was bought, in 1854, and when it was finally paid for, in 1864, Henry Mathews was out of debt.

It is manifest, that, if these facts constituted a good defence to Massey's bill, then this defence was abandoned by the admission that Mathews bought and paid for the land after he had become indebted to Massey's intestate. We think it is to be fairly inferred, that the then solicitor was of opinion that the facts stated did not constitute a good defence, and that Massey's claim would prevail; and, that under this conviction,

he made the admission, believing that he was promoting the interests of his clients in procuring the land conveyed to Garrett by Ray, to be first sold, and also having the approval of Ray and Mathews in making the admission.

But while this view acquits the solicitor of any fraudulent intent, it leaves open the question, whether he was not mistaken as to the validity of the defence of his clients, and also whether his consent and his admission were binding upon them, and whether there is error in the decree based on the admission. If their defence was really invalid, then, of course, they were not injured by the decree, although it was based on an admission which the solicitor may have no right to make; and, under this view, we would not disturb the decree.

The defence relied on by complainants was, that Ray held the legal title of the land as their trustee, by contract with Mathews; that the cash payment of seven or eight hundred dollars made at the time of the contract, was made for their use and benefit; that when the two notes of $750 each were paid, they were paid in pursuance of the original contract, for their use and benefit; and that when the contract was made, and the purchase money was paid, Mathews was free from debt, and had a perfect right to appropriate his money for their use and benefit.

It is clear, that if this contract had been reduced to writing, and signed by the parties, it would have created a valid trust, which the beneficiaries could have

enforced in a Court of Equity, upon the facts stated. Is the trust defeated by the fact, that the contract was by parol? If the answer to this question depended upon §7 of the English Statute of Frauds, we find high authority for the position that it is not necessary, under that section, that the trust should be *created* by writing, but only that it should be *manifested and proved* by writing. Hence, Mr. Hill, in his work on Trustees, page 88, says: "Upon the construction put upon these words it has been decided, that, a trust of land may be still effectually created by parol; and in order to satisfy the Statute, it will be sufficient to show, by written evidence, the existence of the trust." For this he cites 3 Ves., 707; 5 Ves., 308; 12 Ves., 74; 1 J. C. R., 339; 4 Munf., 77, together with a long list of other American authorities.

Mr. Hill proceeds to say: "If the trust were considered to derive its existence, *ab initio,* from the written declaration, the trust estate could not form part of the disposable property of the *cestui que trust* previously to the existence of that declaration; and, moreover, up to that time, it would be liable for the acts and incumbrances of the ostensible owner. But now the declaration when made, has relation backward, to the time of the creation of the trust, of which it is the evidence, and consequently, gives effect to all intermediate acts of disposition made by the *cestui que trust,* between the declaration of trust and its actual creation, while it defeats the rights which parties claiming under the trustee might have otherwise acquiesced. This is,

of course, subject to the protection always given in equity to persons in the situation of *bona fide* purchasers for valuable consideration without notice."

In the present case the trust was created by parol, when the land was purchased in 1854, and in 1866, the trust was manifested and proved by the deed then executed in pursuance of the parol agreement.

The same result follows, if we regard the transaction not as creating a trust by parol, but simply as a parol contract for the sale and purchase of land, in which the purchaser was paid and a conveyance made in pursuance thereof, before any creditor, becoming such after the payment of the purchase money intervened to prevent the consummation of the contract. By the conveyance, Mrs. Mathews and children having the legal title, and having a prior and superior equity, her title could not be disturbed; *Sneed* v. *Bradley,* 4 Sneed, 305.

It follows that Mrs. Mathews and her children had a valid defence to the bill of Massey, and that they lost the benefit thereof by the admission of their solicitor, that Mathews had bought and paid for the land after his liability to Massey's intestate occurred.

It appears that this admission was made without the knowledge or ratification of Mrs. Mathews and her children, but by their solicitor, with the approval of Mathews and Ray, and that the admission was made by way of a compromise, by which the land of Ray, conveyed in the trust deed to Garrett, was first to be sold, and the land of Mrs. Mathews and children only

to be sold if the land of Ray failed to satisfy Massey's claim. As the basis of the decree carrying out the compromise, the admission was made which was fatal to the defence of Mrs. Mathews and children, and which admission is shown in the present case not to be in accordance with the facts. ' It is, therefore, a case in which a solicitor under a misapprehension of the facts or the law, has made a compromise by which his clients have lost the benefit of a valid defence to an unjust claim to the land.

The question then presents itself, did the solicitor, by virtue of his authority as such, have the power to make such an admission by way of effecting a compromise by which his clients obtained a supposed benefit. Mr. Parsons (1 Cont., 117) says: "We take the practice to be, that an attorney's entries on the docket, his agreements about continuances, about evidence, or the conduct of the trial, or, perhaps, about costs, and the like, would, in general, bind the client." But he adds, according to the American authorities, an attorney employed in the usual way to conduct a suit, has, in general, no authority to enter into a compromise without the sanction of his client, express or implied."

In the case of *Walker* v. *Parker*, 7 Cranch, 436, Chief Justice Marshall, after laying it down as the opinion of a majority of the Court, that an attorney has the power to agree to the reference of a cause to arbitration, proceeds to state, that "this is substantially a compromise, and not an award," saying, "that it appears that this award is not the judgment of the arbitrators

in the cause, but a compromise between the attorneys, taking the form of an award; and a compromise made at a time when the cause was not so desperate as the attorney supposed it to be. It was a sacrifice of great and important interests, at a time when that sacrifice does not appear to have been absolutely necessary. Has an attorney a right to make such a compromise?"

These remarks of Chief Justice Marshall as to the facts of the case before him, are entirely applicable to the facts now before us. His answer, therefore, to the question, whether an attorney has a right to make such a compromise, must be high authority in the present case. His answer was:

"Although an attorney at law, merely as such, has strictly speaking, no right to make a compromise, yet a Court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on, or not fairly exercised in the case. But where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance, such a compromise could fairly be made, there can be no hesitation in saying, that the compromises being unauthorized, and being, therefore, in itself void, ought not to bind the injured party. Though it may assume the form of an award, or of a judgment at law, the injured party, if his own conduct has been perfectly blameless, ought to be relieved against it. The opinion is the

more reasonable, because it is scarcely possible, that, in such a case, the opposite party can be ignorant of the unfair advantage he is gaining. His conduct can seldom fail to be tainted with some disingenuous practice, or, if it has not, he knows that he is accepting a surrender of the rights of another from a man who is not authorized to make it."

This reasoning applies with special force to the facts of the present case, and must control its decision.

It follows, that all of the complainants except the two adults, against whom the decree was taken upon *pro confesso* order, are entitled to the relief prayed for by having the decree complained of set aside, and declared null and void, leaving it in force as to the other two complainants. The result is, that Mrs. Mathews is entitled to a life estate in the entire tract of land, and the remainder interest in fee belongs to the three children and Massey, as tenants in common.

The decree of the Chancellor is reversed to the extent indicated, and the costs of this Court and of the Court below will be divided between Massey and the two children, whose title he holds by their decree.