OWEN G. THORP, an infant, by his next friend,

*v.*

JOSEPH LEIBRECHT, PAULINA LEIBRECHT and MINA JOHNSEN.

[Filed October 17th, 1898.]

1. While a plaintiff, who calls defendants as his witnesses, cannot impeach their character for veracity generally, he may show that the whole or any part of what they have sworn to is untrue, either by their own examination and the improbability of their own story or by other contradictory evidence material to the issue.

2. Where defendant conveyed all his property to his wife for a nominal consideration, two months after an action in tort had been instituted against him to recover actual damages for personal injuries, but before final judgment thereon, the transfer was fraudulent as against the plaintiff in that action.

3. A creditors' bill alleged that an execution had been issued on complainant's judgment and delivered to the sheriff, but did not allege what was done thereunder, nor that the judgment debtor was not possessed of other property than the subject of the suit. The evidence given by defendants, however, showed that there was no other property and that the sheriff's return was *nulla bona.*—*Held,* that the case did not show that complainant had a complete remedy by levy on other property, and therefore need not come to this court.

Heard on bill, answer and proofs.

*Messrs. Linn & Speer,* for the complainant.

*Mr. James R. Bowen* and *Mr. Henry Puster,* for the defendants.

PITNEY, V. C.

The object of this bill is to set aside a conveyance made by the defendant Joseph Leibrecht, through an intermediary, to the defendant Paulina, who is his wife, of two certain pieces of real estate situate in Jersey City. The ground for this relief is alleged to be that the said conveyance was made to defraud the complainant, who, at the time of the conveyance, occupied the position of a creditor of Joseph, and has since obtained a judgment upon his claim. The suit which so resulted was based upon a tort committed on November 2d, 1894, and was commenced on the 9th of February, 1895, was litigated and resulted in a final judgment on the 4th of May, 1896, for the sum of $5,038.57, damages and costs. The conveyance in question was made on the 12th of March, 1895, two months after suit commenced, for the nominal consideration of $1. This bill was filed May 7th, 1896, and the answer of Leibrecht and wife August 7th, 1896.

Subsequently, November 6th, 1896, and while the legal title rested in Paulina Leibrecht, the defendant Mina Johnsen obtained judgment against Paulina in the circuit court for the county of Hudson, for the sum of $4,030.65 of damages and $30.02 costs, and, upon petition based upon said judgment, was admitted as a defendant, and answered November 25th, 1896.

The bill alleges that the conveyance from the husband to the wife was made for the purpose of defrauding the complainant, and the consideration of $1 mentioned in the deed of conveyance supports this contention and makes out a *prima facie* case.

But the defendants Joseph and Paulina, by their answer, set up a consideration in this wise:

[Omitting statement of the pleadings and admitted facts.]

The complainant, not satisfied to rest his case upon that state of facts, entered into evidence upon the subject. He entered

into the enemy's camp, and called as witnesses the defendants Joseph Leibrecht and his mother-in-law, Mina Johnsen, who holds a judgment against the wife.

The testimony of these two witnesses, which, if credible, makes for the defendants, was unsatisfactory in the extreme, and well-nigh if not quite incredible, by reason of its own inherent improbability.

[Statement of their evidence omitted.]

No witnesses were offered by the defendants in support of the statements of Leibrecht and Mrs. Johnsen, although at one time it was said that the defendants expected to call the wife, and opportunity was given for that purpose. The husband of Mrs. Johnsen is alive, and no reason was offered why he should not have been called.

The defendants, in this regard, seem to have relied upon a rule of evidence which they assert prevails, viz., that the complainant, having called these two witnesses, made them his witnesses and is bound by their answers, and is estopped from setting up that they are either untrue or that the witnesses are incredible.

I do not understand such to be the rule. My understanding of the modern rule is that a party who calls a witness, no matter how adverse, is not permitted to call witnesses to prove that he is generally unworthy of belief, or to contradict him for that purpose. He cannot impeach his character for truth and veracity generally, but he may show that the whole or any part of what he swears to is untrue, either by his own examination and the improbability of his own story, or by other evidence, contradictory of the evidence of the witness in question, so far as that evidence is material to the issue.

The great and controlling object of the various rules adopted by the court governing the production of evidence is to elicit and establish the truth, and to guard against fraud and imposition. There is no hard and fast rule which compels a jury, or a judge sitting as such, to believe any particular piece of evidence simply because it is sworn to by a living witness. The probability of the story, and the source from which it comes,

must be considered, and when it is said that a judge or a jury has no right to disregard certain evidence, its credibility is always assumed.

The foundation and object of the rule forbidding a party calling a witness to offer evidence for the purpose of impeaching his general character for truth and veracity, is to protect the witness against an unfair use of the process of the court. For it is manifestly unfair to compel a person to take the witness-stand, and then subject him to the indignity of an attack upon his character for truth and veracity. Besides, a party has no right to put upon the witness-stand a person whom he knows or has reason to believe is unworthy of credit. By putting him on the stand he does, ordinarily, assert him to be worthy of credit, and, having done so, the interests of justice require that he should not, under ordinary circumstances, be permitted to directly attack his character for truth and veracity. But this rule falls far short of forbidding the party to show, by any legitimate evidence, that the witness has testified to what is not true, in a matter material to the issue. For it is to be observed that while the witness is to be protected against unfair treatment by the party who compels his attendance, he is not entitled to protection against his own misconduct. The party calling a witness has the right to presume that he will swear to the truth, no matter how adverse he may be; and it does not lie in the mouth of the witness, though he is a party, to say to the party calling him, "You knew I was an adverse party, and would be tempted to prevaricate in my own favor, and you had no right to rely upon my telling the truth against my own interests. I have falsified, and you are bound by it."

This position is illustrated by the practice of discovery in chancery. Originally, it was optional with the complainant to call for an answer under oath or not. Later on it became, in this state at least, necessary for him to do so. Now the old practice has been reinstated. But in all cases, whether the answer under oath was optional with the complainant or not, it was always open to the complainant to deny and disprove its truth, either by extrinsic evidence or by argument based upon

its inherent improbability. And yet, when a complainant calls on a defendant to answer under oath as to the truth of the allegations of the bill, he makes him, to all intents and purposes, his witness in that cause. I can see no more reason why a complainant should not be at liberty to prove that the evidence given by the adverse party on the stand, although called by him, is untrue, than that given in writing in an answer to a bill called for under oath.

Now let us, shortly, review the other evidence and see what the result is.

[Review of evidence omitted.]

Another point made by defendants is that the complainant's cause of action at law being based upon a tort, the relation of creditor and debtor did not exist between complainant and defendant Joseph at the time of the conveyance to the wife, nor until final judgment was rendered, and that Joseph was at liberty to settle his property on his wife at any time before judgment was rendered and entered.

I had occasion to examine one aspect of this question in *Boid* v. *Dean, 3 Dick. Ch. Rep. 193,* and refer to what is found at *pp. 203, 204* for a discussion of the general question and the authorities thereon. That was a suit by a receiver appointed by a common-law court, under proceedings supplemental to judgment and execution, to set aside a voluntary conveyance of chattels by the judgment debtor, made before the cause of action arose, which was founded on a slander. I found, as a matter of fact, that the transfer was made by the debtor with the view of being able to slander the plaintiff with impunity, and held that it was void as to the judgment creditor. That case went farther than it is necessary to go here in order to give complainant an equitable standing to attack the transfer here in question in two respects—*first,* the transfer was made before the cause of action arose or any injury was threatened; *second,* the damages were unliquidated and liable to be increased by way of punishment of the defendant beyond the actual loss of the plaintiff.

In the case in hand the injury was inflicted and the right of

Thorp *v.* Leibrecht.

action accrued and became a vested right in complainant before the transfer, and the damages are presumably confined to the actual pecuniary loss of the plaintiff. The declaration sets forth no facts warranting the giving judgment for punitive damages. The extent of the actual damages, as in all cases of personal injuries to the person, may be somewhat speculative, and therefore quite proper for the consideration of a jury; but they are, after all, based upon actual injury and must be so considered, precisely as if the judgment were for the destruction of a building by fire caused by actionable negligence.

Now, it seems to me a startling proposition to say that my neighbor, through actionable negligence, may set fire to and destroy my dwelling, barns, outbuildings and contents, and escape payment therefor by making a voluntary settlement on his wife of all his property before I can get judgment against him.

The defendants, in support of their position, rely upon the language of Chief-Justice Beasley, in *Severs* v. *Dodson, 8 Dick. Ch. Rep. 633* (at *p. 636*), as follows: "When a man is in debt, especially if such debts be due, it is certainly not irrational to infer, if he give away his property, that the intention was to defeat such claims, but such deduction would seem to be most extravagant if, instead of a present indebtedness, he has incurred a mere liability *as a warrantor of title, as a tort-feasor, or as surety on an administrator's bond.* If such responsibilities as these latter, which may, in the long run, be transformed into debts, should have the effect of invalidating voluntary settlements of property, then such settlements would be the most uncertain of legal transactions."

This classification—counsel contend—puts a tort-feasor, *i. e.,* one who has already committed a tort upon which no judgment has been recovered, in the same category as mere sureties whose principals have not yet made default, and may never do so (and hence the principals are under no present liability), or guarantors against contingencies which may never happen.

With great deference to the high authority of the distinguished jurist who used this language, I think it plainly erroneous and

feel constrained not to follow it or apply it here, for several reasons. In the first place, the case of a tort-feasor who has made himself liable for damages actually suffered and capable of measurement in money, is clearly distinguishable from that of a surety whose principal has not made and may never make default. In the one the right of action is vested and in the other it is not. In the second place, the language is a merely illustrative *dictum* upon a topic not under consideration by the court and not necessary for the decision of the cause in hand, and there is no evidence or reason founded in our knowledge of the mode of disposing of business by the court of errors and appeals to believe that it attracted the attention and received the approbation of a majority of that court. In the third place, it was used in the discussion of a rule of evidence and not of law or equity. The question was as to whether a voluntary settlement was to be conclusively presumed to be fraudulent and void as against a subsequent judgment founded upon a contract of suretyship existing prior to the settlement, but where there had been at its date no default by the principal debtor.

The question was under consideration and was elaborately discussed and decided in favor of the view I have adopted by the court of appeals of Maryland, in *Boston, &c.*, v. *Trust Co.*, *82 Md. 535.*

The English authorities are in the same direction. *Barling* v. *Bishop, 29 Beav. 417, 6 Jur. (N. S.) 812; Crossley* v. *Elworthy, L. R. 12 Eq. Cas. 158 (1871), 40 L. J. Ch. 480 (1871).*

Another point raised by the defendants here was that it did not appear that the complainant had exhausted his remedy at law. The bill alleges that a writ of execution had been issued upon the judgment and delivered to the sheriff of the county of Hudson to be executed, but does not allege what was done under it. Nor does it allege that the judgment debtor was not possessed of other property from which the execution might be made. It abundantly appears, however, by the evidence of the judgment debtor, given at the hearing, that he was possessed, at the time of the issuing of execution and at the time that he was called as a witness, of no property whatever that was liable to

execution upon which anything could be realized without the aid of this court. And with regard to the return of the execution which the bill alleges was issued, it appears by a petition put in evidence by the defendants, made by the complainant to the judge of the circuit court in which the judgment was rendered, that an execution was issued to the sheriff of the county of Hudson, and that the sheriff has since duly returned it, "with a return that he could find neither goods, chattels nor real estate whereof to make the said moneys or any part thereof, according to the exigency of said writ."

This satisfies the requisition of the rule invoked by the defendants, which goes no further than to say that if it appears by the complainant's bill (as it did in the case cited of *Dunham* v. *Cox, 2 Stock. 437*) that the complainant has an execution upon which he may make the amount of the debt without the aid of this court, such state of facts is a bar to his proceeding in this court.

The objection is a technical one, and in this case has no substance whatever.

This disposes of the case as against Leibrecht and wife and also as against the defendant Mina Johnsen, as it is proven that a *lis pendens* was duly filed in the clerk's office of the county of Hudson on the 8th day of May, 1896, the day after the filing of the bill.

I come, therefore, not without regret, to the conclusion that the complainant is entitled to relief. No doubt it seems to the defendant Leibrecht hard that all his hard earnings should be swept away by this verdict for damages which he feels he ought not to be liable for, but it is to be observed that the measure of justice dealt out to him by the jury in the action at law is the same that has been for years dealt out to corporations engaged in business which is attended with danger to individual citizens, and he, therefore, has no right to complain.