MARY BABIRECKI, by Stephen Babirecki, her next friend, and STEPHEN BABIRECKI, individually, complainants-appellants,

*v.*

ANDREW G. VIRGIL, FRANCES VIRGIL, LOUIS J. VIRGIL and MAMIE VIRGIL, defendants-respondents.

[Argued October 23d and 24th, 1924. Decided January 19th, 1925.]

1. The statute to protect creditors and others against conveyances made to defraud them extends its protection to all persons having a valid cause of action arising from torts as well as from contracts.

2. When a tort-claimant has reduced his claim to judgment he may attack a voluntary conveyance made after the liability arose, and before suit was brought to defeat his debt on the theory that

such judgment, when once obtained, relates back, and establishes a debt as of the time when the original cause of action accrued.

3. The burden of proving, when attacked as fraudulent, the consideration of a deed, where no consideration was paid at the time of the conveyance, is upon the grantee.

4. Cross-examination on matters either directly in issue or directly relevant to the issue is a matter of right, and its exclusion error.

5. Where testimony which might have been material to the issues involved in the case has been excluded at a hearing in the court of chancery, the case will be sent back to that court for rehearing.

On appeal from a final decree of the court of chancery dismissing complainants' bill, advised by Vice-Chancellor Church, whose opinion is reported in 96 N. J. Eq. 216.

Mr. John V. Laddey, for the complainants-appellants.

Mr. Frank B. Bozza, for the defendants-respondents.

The opinion of the court was delivered by

KATZENBACH, J.

This is an appeal from a final decree of the court of chancery dismissing the complainants' bill. The bill was filed to set aside, as fraudulent, a deed of conveyance for premises located in the city of Orange. The deed was made on May 5th, 1921, by Frances Virgil and Louis Virgil, her husband, to Mamie Virgil, the wife of Andrew G. Virgil. Mamie Virgil and Frances Virgil had been the owners of the property as tenants in common. The effect of the deed in question was to vest the entire ownership of the property in Mamie Virgil. The bill of complaint alleges that on April 2d, 1921, the complainants, Mary Babirecki, by her next friend, Stephen Babirecki, her father, and Stephen Babirecki, individually, commenced an action in the Essex county circuit court against Andrew G. Virgil, Frances Virgil and Louis Virgil, as partners, to recover damages for injuries sustained by Mary Babirecki, an infant three and a half years of age, as the result of an accident alleged to have been due to the neglience of the defendants, and also

to recover the damages sustained by the father, Stephen Babirecki, as a result of the accident to his child. The accident occurred on January 28th, 1921. The case was tried on February 10th, 1922, and resulted in a verdict in favor of the child for $4,000, and a verdict for the father for $1,068, which was subsequently reduced to $568. Judgments were entered and executions, in the usual form, tested on April 5th, 1922, were issued and delivered to the sheriff of Essex county, who was unable to find any goods, chattels or lands of the defendants upon which to levy. The executions were returned by the sheriff wholly unsatisfied. The personal property of the partnership had been mortgaged to one Rose Cursi at the time of the conveyance to Mamie Virgil of the interest of Frances Virgil in the real estate. The deed of conveyance to Mamie Virgil was a warranty deed. The consideration stated in the deed was one dollar and other good and valuable consideration. It had affixed thereto revenue stamps to the amount of one dollar. The answer filed by the Virgils to the bill of complaint set up that the deed of May 5th, 1921, was made in pursuance of an agreement in writing made between Frances Virgil and Mamie Virgil, dated August 16th, 1917; that the deed by which Frances Virgil became seized of an undivided one-half interest in the premises was not supported by any consideration from Frances Virgil, and was conditional upon the payment by Frances of $2,500 within three years; that should Frances fail to pay this sum she was to reconvey her interest in the property to Mamie Virgil. The agreement of August 16th, 1917, was produced at the hearing. It was written upon a leaf taken from an old account book. It was apparently drawn by an unskilled person. It bore upon its face the evidence of being a home-made document. A photostat copy of it is embodied in the record. The purport of the agreement appears to be that if Frances Virgil does not pay to Mamie Virgil interest annually at six per cent. on $2,500, and make payment to her of $2,500 within three years, then Frances is to deed her interest in the premises situate on Hill and Commerce streets, Orange, to Mamie. Counsel for

the complainants attempted to make a spirited attack upon this writing, especially as to the authenticity of its date, by cross-examination of the parties thereto as to why the agreement had been drawn at home, the date when drafted, the origin of the paper upon which it was written, the ink and pens used in its drafting, the consideration, and the facts and circumstances surrounding its execution. These questions were objected to and the objections sustained by the learned vice-chancellor who heard the case. The result of these rulings was that the complainants were deprived of having embodied in the record the facts and circumstances surrounding the making and execution of the agreement. The correctness of these rulings is made a ground of appeal.

In the conclusions filed by the vice-chancellor he says: "The suit was started in the Essex county circuit court on the 21st of April, 1921. The deed was on May 6th, 1921, and the judgment recovered was on February 10th, 1922. Therefore, when the suit was started there were no creditors in existence, because the outcome of the suit was uncertain, and, under the cases, in the absence of fraud, a person, even if he be assumed to be in failing circumstances, may prefer a creditor unless the creditor unites with the one making the conveyance to defraud." This is an erroneous statement of the law. The statute to protect creditors and others against conveyances made to defraud them has been held in numerous decisions in this state to extend its protection to those who have valid actions for damages for torts. The leading case upon this subject is that of the *Washington National Bank* v. *Beatty, 77 N. J. Eq. 252.* This court in that case, speaking through the late Judge Dill, said: "The rule, both in England (*Twyne's Case. 3 Coke 82*) and in this state, is that the statute extends its protection to all persons having a valid cause of action arising from torts as well as from contracts. *Boid* v. *Dean, 48 N. J. Eq. 193; 21 Atl. Rep. 618; Post* v. *Sliger, 29 N. J. Eq. 554: Scott* v. *Hartman, 26 N. J. Eq. 89; Thorp* v. *Leibrecht, 56 N. J. Eq. 499; 39 Atl. Rep. 361.* Nevertheless, a tort-claimant, to place himself in the position of a lawful creditor or person competent

under the statute to set aside a voluntary conveyance, must reduce his claim to judgment, and thus establish a legal debt against the fraudulent grantor. When his claim has thus been liquidated and established as a lawful debt, he may attack a voluntary conveyance made after the liability arose and before suit was brought, to defeat his debt, on the theory that such judgment, when once obtained, relates back and establishes a debt as of the time when the original cause of action accrued."

The learned vice-chancellor also said in his conclusions: "Neither do I think that the statement that the deed of May 6th, 1921, is for a nominal consideration, is of importance. It is a warranty deed with the usual covenants, *and consideration is presumed.*" This is an incorrect statement of the law. The burden of proving, when attacked as fraudulent, the consideration of a deed, where no consideration was paid at the time of the conveyance, is upon the grantee. In the recent case in this court of *Coleman* v. *Graff, 94 N. J. Eq. 223,* where this court adopted the opinion of Vice-Chancellor Buchanan, it was held that where a son conveyed to his mother a property after having determined to breach a marriage contract and no valuable consideration at the time of the transfer moved from the mother, that a case was established which threw upon the defendants the burden of proof. In this case no action for breach of promise of marriage had been instituted at the time of the transfer. In the case under consideration the burden of proof was upon Mamie Virgil, the grantee, to show that the conveyance was *bona fide* and based upon a valuable consideration. Consideration was not presumed merely because it was a warranty deed, with the usual covenants as stated by the vice-chancellor.

If by the decision rendered it is apparent that the court misapprehended the law governing the case, it is impossible for a reviewing court to determine to what extent the erroneous views of the lower court contributed to the decision reached. For these reasons we feel that the decree of the court of chancery should be reversed.

There is also another ground upon which we think the decree below should be reversed. It has been stated that the complainants endeavored by cross-examination of the defendants to show the facts and circumstances surrounding the drafting and execution of the agreement of August 25th, 1917, and that upon objections made the questions asked for this purpose were overruled. The attitude of the court is best evidenced by a reference to a few of the questions asked and the rulings made. Mamie Virgil, the grantee, was asked upon cross-examination, "Why wasn't the consideration, the true consideration, then mentioned in the deed?" This question was objected to and the objection sustained. The same witness was asked, "Why was there only a one dollar revenue stamp attached to the deed instead of the legal fee of $2.50?" This question the court would not permit to be answered, as also the question, "Now, when was this agreement drawn?" When the same witness, Mamie Virgil, was asked, "And did you use the same pen?" the court said, "I don't want to hear any more about how this agreement was executed, and I won't permit any further questions along that line." The court had previously said, "The agreement shows when it was drawn." The same and similar questions were asked Frances Virgil and were overruled. In his opinion the vice-chancellor said, "The crux of the case is the alleged agreement between Mamie and Frances." This was true. The agreement was one which upon its face bore evidence which justified a suspicion as to its authenticity as to date at least. The facts and circumstances surrounding its drafting and execution were legitimate subjects of inquiry. They were relevant to the issue. The complainants were entitled to all the information which could be elicited by the examination or cross-examination of those who were parties to the agreement, or who had anything to do with its drafting and execution. This information was denied the complainants by the rulings of the vice-chancellor. This court held, in an opinion written by Mr. Justice Parker in the case of *Prout* v. *Bernards Land and Sand Co., 77 N. J. Law 719,* that cross-examination on matters, either directly in issue or

directly relevant to the issue, is a matter of right, and its exclusion error. In the recent case of *Baus* v. *Trenton and Mercer County Traction Co.,* decided in this court on October 20th, 1924, and reported as yet only in *2 N. J. Adv. R. 1668,* a judgment was reversed because of the failure of the trial court to permit a witness to answer upon cross-examination a question which was deemed relevant to the issue. Mr. Justice Campbell, who wrote the opinion in this case, cited with approval the case of *Prout* v. *Bernards Land and Sand Co., supra.* It may be that the vice-chancellor had, prior to the attempted cross-examination, become satisfied that the complainants' suit was without merit, and that nothing which could be brought out upon cross-examination would alter the view which he entertained. This, however, furnished no basis for a refusal to allow the questions asked to be answered. The court of chancery was not the final tribunal to pass upon the complainants' case. The complainants had the right to a review of their case by this court. Testimony which might not have influenced the vice-chancellor in his conclusions might in this court be differently viewed. A litigant has the right to have brought out all the facts which have a bearing upon his case. A trial judge must at all times be patient. The door to any legitimate subject of inquiry must not be closed.

In the case under consideration we feel that the doors were closed upon the complainants in violation of their rights. They were entitled to have answered the questions which the court would not permit to be answered. It was error to have overruled them.

For the reason that testimony which might have been material to the issue, and which might have been, if adduced, important in determining the merits of the controversy, was excluded, this case will be sent back to the court of chancery for a rehearing. This course was taken, for substantially the same reason, in the recent case of *Silverman* v. *Klussman,* decided October 20th, 1924, and reported in *2 N. J. Adv. R. 1481,* and in *96 N. J. Eq. 224, 621.*

The decree of the court of chancery is reversed. The case is remanded to the court of chancery to be reheard upon lines indicated in this opinion.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Minturn, Black, Katzenbach, Campbell, Lloyd, White, Gardner, Van Buskirk, Clark, McGlennon, Kays, JJ. 14.