**Stefena BROWN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 12628.**

United States Court of Appeals
Sixth Circuit.

May 18, 1956.

troit, Mich., on the brief), for appellant.

Dwight K. Hamborsky, Detroit, Mich. (Fred W. Kaess, Detroit, Mich., on the brief), for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a judgment of conviction of criminal contempt rendered by the United States District Court because of appellant's refusal in a denaturalization proceeding to answer certain questions on cross-examination following her direct testimony as a witness. Her refusal was predicated upon the Fifth Amendment to the Federal Constitution.

The government, April 24, 1953, filed a complaint for cancellation of appellant's citizenship, alleging that appellant at the time of her registration pursuant to the Alien Registration Act of 1940, 54 Stat. 670, had knowingly made false representations as to her membership in any organization devoted in whole or in part to influencing or furthering the political activities of a foreign government. It was charged that appellant on August 22, 1946, in testifying before the naturalization examiners under oath made false statements with reference to membership in the Communist Party and to the fact that she had not been a member of, or affiliated with, any organization teaching disbelief in, or opposition to, organized government. The complaint averred that as a result of concealment of material facts and false representations appellant was admitted to citizenship and took the oath of allegiance to the United States, although she had been a member of the Communist Party of the United States and Young Communist League from 1933 to at least February 1937, and during this period these organizations advocated or taught the overthrow by force or violence of the government of the United States. Appellant's answer denied any fraud or

George W. Crockett, Jr., Detroit, Mich. (Goodman, Crockett, Eden & Robb, De-

misrepresentation on her part in the proceedings.

At the trial appellant was called as a witness by the government under Rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C. She answered questions covering the period prior to her naturalization in 1946, but refused to answer questions relating to Communism or Communist activity subsequent to 1946, claiming her privilege under the Fifth Amendment. The court as to such questions sustained appellant's claim of privilege. She testified that she was never a member of the Communist Party at any time prior to her naturalization, that prior to 1946 she did not know three witnesses for the prosecution, but that she knew two others. At the conclusion of the government's examination defendant's counsel called appellant in direct examination as a witness for the defense. She testified that she belonged to the Young Communist League from 1930 until January, 1935, at which time she left the Young Communist League and from then until her naturalization in 1946 she did not engage in any Communist Party or Young Communist League activities. She reaffirmed the truthfulness of her answers in the naturalization proceeding and in taking the oath of allegiance and denied that she had ever belonged to any organization that taught or advocated the overthrow of existing government in this country. She denied that she was asked at the time of her naturalization whether or not she had been a member of a Communist organization and denied that she knew or had ever attended any closed Young Communist League or Communist meeting with the prosecution witnesses Virgil Stewart or Bernice Baldwin.

Appellant also testified on direct examination as follows with reference to the post-1946 period and with reference to her attitude at the time of the trial:

"Q. In question 28 you were asked: 'Are you a believer in anarchy, or the unlawful damage, injury or destruction of property, or of sabotage?' And you answered 'No'. Was that a true answer to that question? A. That was a true answer.

"Q. You say it was not only a true answer at the time you filed the petition, July 16, 1946, and is that the true answer today? A. It is true. It was a perfectly true answer to that question. I never believed in overthrowing anything. I believe in fighting for this country. I like this country. I never told anybody I didn't.

"Q. Did you ever teach or advocate anarchy or overthrow of the existing government in this country? A. Teach?

"Q. Did you ever teach the idea that we ought to overthrow the government of the United States? A. No, I never did.

"Q. Did you ever advocate that? A. No.

"Q. Did you ever say that we should? A. No, I never did.

"Q. To your knowledge, did you ever belong to any organization that taught or advocated anarchy or the overthrow of the existing government in this country? A. No. As much as I know, I didn't belong, to destroy the country. I believe in helping the country, and helping the people. That was my life of living, not destroying the things that the people put up.

"Q. Are you attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States? A. That, I am."

When asked on cross-examination, "Are you now, or have you ever been, a member of the Communist Party of the United States?" she claimed her privilege under the Fifth Amendment and declined to answer. The court ruled that by taking the stand in her own defense appellant had waived her privilege and directed her to answer. Appellant then

refused to answer the following questions, basing her refusal on the Fifth Amendment:

"Q. Isn't it true that in 1947 you were a member of the McGraw Communist Club, District No. 7 of the Communist Party of the United States?

"Q. Do you know what the Michigan School of Social Science is?

"Q. Do you know Barry Cody?

"Q. What year was the first time that you were a member of the same Communist Party Club as Barry Cody?

"Q. Isn't it true that there was an executive board meeting of the McGraw Communist Club held at your house in 1948?

"Q. Isn't it true that you have paid Communist Party dues in the McGraw Communist Club?

"Q. Did you attend an affair of the Communist Party celebrating the birthday of William Z. Foster, national chairman of the Communist Party?

"Q. Were you a student in the class at the Michigan School of Social Science, in Detroit, in 1948 and 1949?

"Q. Did you attend a meeting of the Lenin Memorial sponsored by the Communist Party at any time?

"Q. In 1948 did you hold Communist Party membership card No. 72066?

"Q. Did you hold Communist Party membership card No. 72061 in 1949?

"Q. You mean you never belonged to the Communist Party?"

The court held that appellant in testifying as a witness in her own behalf waived the right to exercise her privilege under the Fifth Amendment and found her in contempt of court. Appellant contends that a party by taking the stand in his own behalf in a civil proceeding does not waive his Constitutional privilege against incrimination.

The denaturalization proceeding is a civil case. Although the Fifth Amendment in its express terms covers criminal prosecutions and not civil cases, the courts have extended the protection of the amendment to civil as well as criminal proceedings. The meaning of the privilege is not merely that a person charged with crime shall not be compelled to be a witness against himself in a criminal prosecution; but that a person shall not be compelled, when acting as a witness in an investigation, to give testimony tending to show that he himself has committed a crime. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. Or, as stated in McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158, a bankruptcy case, the privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it."

The privilege may be waived, however. In Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 568, 70 L.Ed. 1054, the Supreme Court held that a defendant in a criminal case who voluntarily testifies in his own behalf waives completely his privilege under the Fifth Amendment. As Mr. Justice Stone there stated, when the defendant takes the stand in his own behalf "within the limits of the appropriate rules he may be cross-examined as to the facts in issue. * * * He may be examined for the purpose of impeaching his credibility. * * * If, therefore, the questions asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination, they were proper questions, unless there is some reason of policy in the law of evidence which requires their exclusion."

The court pointed out that "The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf

and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, as does any other witness."

This decision was followed in Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704. The principal question there was whether it was error for the trial court, after granting the privilege against self incrimination, to permit the prosecutor to comment upon the claim of privilege and to permit the jury to draw any inference therefrom. The Supreme Court in ruling upon this point held that, since the petitioner, who was on trial for willful attempt to defeat and evade income taxes, took the stand and in direct examination made statements in self-defense, he waived the privilege. On page 195 of 318 U.S., on page 552 of 63 S.Ct. the court quotes 8 Wigmore on Evidence, 3rd Ed. (1940), Section 2276(2) to the effect that his " 'voluntary offer of testimony upon any fact is a waiver as to all other relevant facts, because of the necessary connection between all.' " The District Court in the Johnson case, supra, had upheld the claim of privilege, but the Supreme Court indicated, 318 U.S. 196, 63 S.Ct. 553, that it would "not have been error for the court to deny petitioner's claim of privilege."

Two questions arise in this case, therefore: (1) Does the rule in Raffel v. United States, supra, and Johnson v. United States, supra, apply in civil proceedings? (2) Are the questions asked in cross-examination here and not answered by appellant relevant to her story told on direct examination? If the rule applies in civil cases, and if the questions asked were relevant, the judgment of the District Court must be affirmed. It is not claimed that the testimony sought to be elicited is not relevant and our consideration of the record forces us to conclude that it is.

■ As to the question whether the same rule of waiver of the constitutional privilege applies in civil as in criminal

cases, we are cited to no decision specifically in point. We do not consider the question as to whether appellant's merely taking the stand constitutes a waiver. Here she testified at length in her own defense and our conclusions are based upon that fact. Both parties concede that this is a criminal contempt committed in the presence of the court and punishable under Title 18 U.S.C. § 401. Cf. Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. We think this circumstance is not important.

■ Appellant's position briefly stated is that the waiver of a constitutional right must not be presumed and that when she testified in her own defense as to the allegations of false representation alleged in the complaint she did not intend to waive the privilege of the Fifth Amendment. It is argued by intelligent counsel that her action does not clearly show an intent to waive the privilege and that under Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680, we are compelled to indulge every reasonable presumption against the waiver of a fundamental constitutional right. But if appellant's contention is correct, the right of cross-examination, which is called the most efficacious test devised by the law for the discovery of truth, will be cut off in this case after appellant on direct examination has told her story in detail. Cross-examination is "the great and permanent contribution of the Anglo-American system of law to improved methods of trial procedure". Wigmore on Evidence, Vol. 5, 3rd Ed., Section 1367. The fact that appellant demands that the cross-examination of her story be cut off is all the more pertinent because the right of cross-examination has its root in the Federal Constitution. The essential purpose of confrontation is cross-examination. As Mr. Chief Justice Rugg, speaking for the Supreme Judicial Court of Massachusetts, in Commonwealth of Massachusetts v. Gallo, 275 Mass. 320, 175 N.E. 718, 724, 79 A.L.R. 1380, pointed out, "One main

purpose of the rules of the common law as to the production of testimony in criminal cases is that its credibility shall be tested by cross-examination." See also 58 Am.Jur. 340. In Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 332, 78 L.Ed. 674, opinion by Mr. Justice Cardozo, it is declared that "the privilege to confront one's accusers and cross-examine them face to face is assured to a defendant by the Sixth Amendment in prosecutions in the federal courts * * *." Under the Sixth Amendment the right of an accused to be confronted by the witnesses against him imports the constitutional privilege to cross-examine the opposing witness. State of Maine v. Crooker, 123 Me. 310, 122 A. 865, 33 A.L.R. 821. See also 14 Am.Jur. 889, Note 18 and numerous cases cited. Cf. Dowdell v. United States, 221 U.S. 325, 31 S.Ct. 590, 592, 55 L.Ed. 753, in which Mr. Justice Day points out that the provision of the Philippine statute which was substantially taken from the Bill of Rights of the Federal Constitution, was to give the accused "an opportunity of cross-examination" and "particularly to preserve the right of the accused to test the recollection of the witness in the exercise of the right of cross-examination."

▮ The right of cross-examination thus held to be inherent in the constitutional right of confrontation belongs to the state, as well as to the accused. Powers v. United States, 223 U.S. 303, 32 S. Ct. 281, 56 L.Ed. 448. In that case the accused voluntarily took the stand and testified in his own behalf. The court held, 223 U.S. at page 314, 32 S.Ct. at page 284, that he was properly "subjected to a cross-examination concerning his statement. 'Assuming the position of a witness, he is entitled to all its rights and protection and is subject to all its criticisms and burdens' and may be fully cross-examined as to the testimony voluntarily given." Reagan v. United States, 157 U.S. 301, 305, 15 S. Ct. 610, 39 L.Ed. 709. The witness under such circumstances "is not permitted to stop, but must go on and make a full

disclosure." Brown v. Walker, 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819; Tomlinson v. United States, 68 App.D.C. 106, 93 F.2d 652, 114 A.L.R. 1315, certiorari denied Pratt v. U. S., 303 U.S. 642, 58 S.Ct. 645, 82 L.Ed. 1107. Moreover, these decisions are not limited to instances where the accused admits a criminal act. He may, as this appellant has done, deny any criminal act, but his denial if given on the stand in his own defense is subject to cross-examination.

▮ The cross-examination of a witness is a matter of right. Fahey v. Clark, 125 Conn. 44, 3 A.2d 313, 120 A.L. R. 517; Babirecki v. Virgil, 97 N.J.Eq. 315, 127 A. 594, 39 A.L.R. 171; Alford v. United States, 282 U.S. 687, 691, 51 S.Ct. 218, 75 L.Ed. 624. We conclude that the rationale of the rule as to waiver of the privilege by an accused who voluntarily offers himself as a witness in his own behalf and testifies in chief applies in civil cases. The appellant here may not prevent or defeat cross-examination by claiming protection against compulsory self incrimination under the constitutional provision. Since cross-examination is a basic right rooted in the Constitution of the United States it should not be eliminated except by the highest authoritative legislative provision or judicial decision.

In the Raffel case, supra, and Johnson v. United States, supra, no subtleties were indulged in as to what the defendant intended to do in the way of waiving the privilege. It was held that a defendant in a criminal case who voluntarily testifies in his own behalf completely waives his privilege. This appellant voluntarily testified in her own behalf. There is neither logic nor justice in the contention that she has the benefit of the Fifth Amendment but none of its burdens. When appellant voluntarily offered in her own behalf on direct examination facts material to the issues in the denaturalization proceedings and facts with reference to the period subsequent to 1946, she was compelled to do so "without reservation, as does any oth-

er witness." Raffel v. United States, supra. The waiver is not partial. Having cast aside the cloak of immunity, the party may not resume it at will.

The instant case involves the question of appellant's connection with the Communist Party. But the question of self incrimination may arise in many other types of controversy. In a contract case evidence may be adduced tending to convict a party of perjury. Now and then evidence presented tends to convict a party of forgery. In tax cases the record often tends to convict a defendant in a civil case of violation of criminal law. To hold that a defendant, under the claim of protection against self incrimination, may tell his full, self-serving story without any test of its truth by cross-examination is to make a mockery of the judicial proceeding.

We conclude that the rule of waiver applicable in criminal cases under Raffel v. United States, supra, is applicable here and required appellant to answer the questions propounded. Any other conclusion would have wide repercussions in many cases involving other situations than that here presented. If in civil cases which involve features of criminality witnesses and parties connected with such possible charges were excused from cross-examination, the opportunity of exposing fallacy, misstatement, or bias would be seriously curtailed. The statement of Judge Learned Hand in United States v. St. Pierre, 2 Cir., 132 F.2d 837, 839, 147 A.L.R. 240, although made in a criminal case, is squarely applicable. He said:

"The law in this country * * * rests upon the obvious injustice of allowing a witness, who need not have spoken at all, to decide how far he will disclose what he has chosen to tell in part, and how far he will refuse to let his veracity be tested by cross questioning. In adversary cases it is hard to see how a trial could go on, if this were allowed."

The judgment of the District Court is affirmed.