6

## BOBBY WOMACK, a minor, by next friend, EUGENE E. WOMACK v. I. A. CALDWELL et al. —349 S. W. (2d) 795.

Eastern Section at Knoxville. May 22, 1961.

Rehearing Denied June 30, 1961.

Certiorari Denied by Supreme Court September 6, 1961.

Miller, Martin, Hitching & Tipton, Chattanooga, for appellant.

Moore & Swafford, Chattanooga, for appellee.

Moon, Harris & Dineen, Chattanooga, for Title Guaranty & Trust Co. and Rossville Federal Savings & Loan Assn.

AVERY, P.J. (W.S.).  This cause was heard by the Judges of the Western Section of this Court sitting at Knoxville in the Eastern Section.

It is a bill which undertakes to set aside a conveyance executed by the defendant below, I. A. Caldwell, to his daughter, Mrs. Nora Caldwell Stone, by which he conveyed to her his home described in the original bill as follows:

"Situated in the second civil district of Hamilton County, Tennessee, being Lot Seven (7) Block Two (2), of the re-subdivision of part of Block Two (2), Brookfield Place, shown by plat recorded in Book L, Vol. 29, page 487 in the Register's Office of Hamilton County, Tennessee.

"Said lot fronts seventy-two (72) feet on the east line of Belvoir Avenue and extends back eastwardly to the east line of said subdivision on which it has a

footage of 88.3 feet, its north line being 202.4 feet in length and its south line 200 feet in length."

And to subject that property to a judgment rendered against I. A. Caldwell in favor of the complainants below growing out of an automobile collision which severely injured Bobby Womack, a minor who brought the suit by his father as next friend. There was a decree below in favor of the defendant and to which complainant saved exceptions, prayed an appeal to the Court of Appeals of Tennessee, which was granted, perfected and disposed of by this Opinion.

The parties will be referred to in accord with the respective status each sustained in the Chancery Court of Hamilton County.

The complainant was severely injured in an automobile accident involving collision with the automobile of the defendant, I. A. Caldwell, on March 8, 1959, in which collision the said I. A. Caldwell was also severely injured. Defendant, I. A. Caldwell, was carried immediately to the Erlanger hospital in Chattanooga where on March 16, 1959, he executed the deed conveying the involved property to his daughter. Title Guaranty and Trust Company is made a party defendant to the suit as trustee, as is Rossville Federal Savings and Loan Association, the holder of the secured debt originating on May 15, 1959, in the amount of $5,500.

Defendant, I. A. Caldwell, is a widower, and his only child is the defendant, Mrs. Stone. Mrs. I. A. Caldwell died October 25, 1957, and in the very first part of the year 1958, at the request of her father, for the consideration hereinafter referred to and stated in the deed of

conveyance, moved into the involved property which was the homeplace of her father and deceased mother, under conditions recited in the decree of the learned Chancellor, and at which time there was a debt owing by her father secured by deed of trust on said real estate previously executed by her father and mother.

On November 23, 1959, the complainant having brought suit charging defendant I. A. Caldwell with negligence growing out of the automobile collision, recovered a judgment against him for $15,000 compensatory damages and $7,250 punitive damages, and of which judgment only $6,000 was paid. It may be assumed that the payment was made by Mr. Caldwell's insuror. The suit, which resulted in that judgment had not been filed at the time the deed was executed.

The bill is predicated upon the assumption and allegations that the conveyance is fraudulent, rendering the defendant, I. A. Caldwell, insolvent; that his daughter and her husband had knowledge of the collision and injury of the complainant and that the Title Guaranty Company and the holder of the secured debt also had knowledge of the pending liability of I. A. Caldwell when it issued the Title Guaranty bond and closed the loan agreement.

The defense is predicated upon the allegations that there was an oral contract and agreement between the defendant, I. A. Caldwell and his daughter, soon after the death of his wife, and her mother, by which he orally contracted with her that if she and her husband and family would move into his home—the property involved —assume the debt then against it, secured by the deed of trust thereon, and take care of him, he would give her this property, and that the deed was executed pursuant

to and for the consideration set out and agreed to by that oral contract. The answer sets forth the detailed defense and denies all allegations of fraud, collusion to defraud and wrongful acts on the part of each defendant.

The record shows that at the time the bill was filed or later, I. A. Caldwell was adjudged a bankrupt, one E. Blake Moore had been appointed trustee in that bankruptcy proceeding, and by the proper petition and orders had become a party to this pending cause of action, with the allegation in his petition that in event the deeds were set aside, title to the property should be vested in him as such trustee for the benefit of the creditors of the bankrupt estate.

The learned Chancellor, Honorable M. B. Finkelstein, Part II, Chancery Court of Hamilton County, Tennessee, found the issues in favor of the defendants, having filed a detailed Memorandum Opinion and decreed accordingly.

The errors assigned in this Court are:

"I.
"The Court erred in holding that a tort claimant is not considered a creditor until an action is commenced.

"II.
"The Court erred in holding that it was not necessary to pass upon the financial condition of defendant Caldwell on the date of the conveyance.

"III.
"The Court erred in holding that a parole agreement to convey real estate is good against creditors of the vendor.

## "IV.

"The Court erred in finding that a parole agreement to convey was made.

## "V.

"The Court erred in holding that the conveyance from defendant Caldwell to defendant Stone was not fraudulent."

Responding to Assignment of Error I, we do not understand the learned Chancellor to have held that a tort claimant is not considered a creditor until an action is commenced. He simply held that Scarborough v. Pickens, 26 Tenn. App. 213, 179 S. W. (2d) 585 "is authority for holding that a tort claimant is a creditor. There the tort action was filed on the same day the Chancery suit was commenced." He also distinguished the case of Cooper v. Cooper, 22 Tenn. App. 473, 124 S. W. (2d) 264, from the instant case by saying: "In Cooper v. Cooper, supra, the claimant actually obtained a judgment prior to the execution of the deed."

The only cases relied upon in the brief of the complainant filed with the Assignments of Error not relied upon in the Court below, are Oliphant v. Moore, 155 Tenn. 359, 293 S.W. 541; Ashbaugh v. Sauer, 268 Mich. 467, 256 N.W. 486, and Babirecki v. Virgil, 97 N.J.Eq. 315, 127 A. 594, 39 A.L.R. 171. We have carefully read the entire record and Memorandum Opinion, with the Finding of Facts by the learned Chancellor. It seems to us to fully cover every issue necessary for our consideration and is such an excellent Opinion and Finding of Facts we have adopted it as our own, making it the Opinion of this Court, which is as follows: —

"Memorandum Opinion

"This is a suit to have a conveyance declared fraudulent. It involves the validity of a parol agreement made in late 1957 on the part of defendant, I. A. Caldwell, to convey his homeplace to a married daughter, defendant, Nora Caldwell Stone, on condition that she give up the maintenance of her own home, move with her family into the father's dwelling and there make a home for him. The daughter accepted the offer and moved into the father's residence in the early part of 1958. On March 8, 1959 the father, while driving his automobile, had a collision and inflicted serious injuries upon complainant. On November 23, 1959 complainant obtained a judgment against the defendant Caldwell, $15,000.00 compensatory damages and an additional sum for punitive damages. $6,000.00 was paid on the judgment.

"On March 16, 1959, while Mr. Caldwell was still in the hospital, he executed a deed to his daughter. The deed recites,

" 'In Consideration of the Grantee assuming the balance owing on a mortgage loan of $5400.00 assumed by the Grantor in the deed executed to him by H. D. Williams and wife, and the agreement to furnish the grantor a home for remainder of his life, the Grantor, I. A. Caldwell, has bargained and sold, and hereby transfers and conveys unto Mrs. Nora Caldwell Stone the following described real estate, to-wit;' (Description follows).

"Complainant contends that the conveyance was made in violation of the Uniform Fraudulent Conveyance Act, for an unfair consideration and with intent and purpose

to delay, hinder and defraud complainant in the enforcement of his right of action.

"Finding of Facts

"The death of Mrs. I. A. Caldwell occurred October 25, 1957. Defendant, I. A. Caldwell, after becoming a widower, tried to induce his daughter, defendant, Mrs. Stone, to give up the maintenance of her own home, move into the Caldwell homeplace and there make a home for him. He proposed deeding the property at 712 Belvoir Avenue to the daughter, and she accepted the offer. Mrs. Stone gave up the privacy of maintaining her own home, when she and her family moved into and took possession of the father's house in the early part of 1958. As between the father and daughter, the homeplace was thereafter considered the property of the daughter. At the time of this parol agreement Mr. Caldwell had no creditors, was not engaged in any business and did not have in contemplation entering into any transactions whereby he would become financially involved. At that time Mr. Caldwell's only source of income was from Social Security. The details concerning what was contemplated in connection with furnishing a home for Mr. Caldwell were not gone into. It is reasonable to infer that Mr. Caldwell had in contemplation that his daughter would eventually inherit the property and that, by giving it to her then, she and the grandchildren would bring warmth and life into a rather desolate home, and he would have someone to prepare proper food and give care and comfort to an aged, lonely father at a time in his life when he was desperate for companionship. It may also be inferred that the promise to convey induced Mrs. Stone to give up her own home.

"On March 16, 1959 defendant Caldwell, while still in the hospital, had an attorney prepare a deed to the daughter 'to make it legal.' This was a layman's way of recognizing his being neglectful about fulfilling his agreement with his daughter.

"The issues to be decided, from the pleadings and proof, are:

"(1) Was there a parol agreement to convey, followed by continued possession on the part of the grantee?

"(2) When the deed was executed, was that done in the furtherance of giving effect to the parol agreement?

"(3) Was the deed executed March 16, 1959 given in violation of the Uniform Fraudulent Conveyance Act to hinder, delay and defraud complainant?

"The only authorities furnished in complainant's brief are TCA 64-312, Scarborough vs. Pickens, 26 Tenn.App. 213, 170 S.W. (2d) 585, and Cooper vs. Cooper, 22 Tenn. App. 473, 124 S.W. (2d) 264.

"TCA 64-312 declares to be fraudulent every conveyance that renders the person disposing of property insolvent, where the conveyance is without a fair consideration.

"The Scarborough case is authority for holding that a tort claimant is a creditor. There the tort action was filed on the same day the Chancery suit was commenced.

"In Cooper vs. Cooper, supra, the claimant actually obtained a judgment prior to the execution of the deed.

"The case at bar distinguishes itself from Cooper vs. Cooper, in that the parol agreement between father and daughter took place more than a year prior to the conveyance, and the daughter remained in continuous possession of the premises. When the conveyance was made March 16, 1959, a tort claim existed, but no action had been brought, and under the early case of Sanders vs. Logue, 88 Tenn. [355] 363 [12 S.W. 722], a tort claimant was not considered a creditor until the action was commenced.

"In Sneed vs. Bradley, 36 Tenn. 301, complainants were judgment creditors of the defendant Bradley, and after exhausing their legal remedy, sought to reach a fund in the hands of a purchaser of property under parol agreement and alleged in a supplemental bill that the sale or arrangement was in fraud of and made with intent to defeat the rights of the complainants. The Court held,

" 'A third person can not interpose to arrest the execution of a verbal contract for the sale of land on the sole ground that the requirements of the statute of frauds have not been complied with, when the vendor admits the agreement and is willing to perform it, and the purchaser is alike willing to accept such performance. The parties have the legal right to complete the contract; and having done so, the transaction is as valid as effectual to vest the title in the purchaser as if the statute has been complied with in the inception of the contract.'

"The Court also held that the allegation of fraud was denied by defendants in positive terms and was not sufficiently proved.

"Hilton vs. Duncan, 41 Tenn. 313, involved a parol sale of property, and the Court held,

" 'It is true that either party could at any time, for want of a writing, put an end to the contract, but they were not obliged to do so. So long as they were content with it, and were willing to abide by it, and the complainant remained in possession of the land, without claim or suit by the said Anna or her heir, not wishing himself to disturb the contract, and the other party not having done so, he could not, we apprehend, sue to recover back the money given in consideration of the land. Hurst v. Means, 2 Swan, 594-599; 2 Sneed, 546-548. It is true that in the case in Swan, the court, in argument, hold to the reverse of this. But that part of the opinion was unnecessary to the decision of the cause,—the contract there being in writing, and went upon the ground that a parol contract for the purchase of land was entirely void, and for all purposes the same as if it had never existed. But in Sneed et al. v. Bradley et al., 4 Sneed, 301, it was held by this court that such a contract is not entirely void, but might be completed by the voluntary consent of the parties; and it was laid down as the correct rule that while the vendor is able and willing and ready to perform the parol agreement, the purchaser can maintain no action to recover back the consideration-money paid. And a fortiori this must be so where the purchaser still retains the use and possession of the land.'

"Mathews vs. Massey, 63 Tenn. 450.

" 'A valid trust of land may be created by parol, and to satisfy the Statute of Frauds, it will be suffi-

cient to show by written evidence, the existence of the trust. Thus, a husband bought land for his family, paying part cash, and executing notes for the balance. The vendor retained the title, but verbally agreed with the husband, that, upon completion of the payments, he would convey the land to the wife for life, remainder in fee to the children. The purchase notes were paid, and the conveyance was made to the husband, as trustee, to carry out the original intention.

" 'Held, That the parol agreement created a valid trust in favor of the beneficiaries, and that their equity was superior to that of a creditor of the husband and vendor, becoming such after completion of the payments, and before the execution of the conveyance.

" 'Case cited: Smith v. Bradley, 4 Sneed [301] 305.'

"Bakefield [Brakefield] vs. Anderson, 87 Tenn. 206 [10 S.W. 360],

" 'A parol contract for sale of lands—being otherwise unexceptionable—will be specifically enforced by a court of equity where, in proper pleadings seeking its specific performance, the parties have fully set out and agreed upon the terms of the contract, and neither has relied upon the statute of frauds. Refusal of specific performance, in such case, is error.'

"King vs. Coleman, 98 Tenn. [561] 571 [40 S.W. 1082],

" 'True it is, that a parol sale of land is voidable only and not void, and that independent third parties cannot intervene to prevent its completion and en-

forcement, when the vendee is in possession, and both he and the vendor are ready, able, and willing to comply with its terms (Brakefield v. Anderson, 87 Tenn., 206; Phillips v. Kimmons, 94 Tenn., 562 [29 S. W. 965]; Citty v. [Southern Queen] Mfg. Co., 93 Tenn. [276] 278 [24 S.W. 121]; Sneed v. Bradley, 4 Sneed, 301) * *'

"Bailey vs. Henry, 125 Tenn. [390] 400 [143 S. W. 1124],

" 'But our statute of frauds does not in terms denounce as void ab initio a contract made in contravention of its terms with respect to the alienation of lands. It only bars any action on such contract, and the statute is operative to defeat such a contract only when interposed by one of the parties, and such contract may be enforced by the consent and upon the application of the parties to it, and so long as it is recognized, affirmed, and adhered to by the parties, it cannot be annuled by voluntary action of the courts, as has been held by this court, where a parol sale of land was involved, in the case of Brakefield v. Anderson, 87 Tenn. [206], 209, 10 S.W., 360'

"Cherokee Foundries vs. Imperial Assur. Co. (1949), [188 Tenn. 349] 219 S. W. (2d) 203,

" 'A third person cannot interpose, to arrest execution of a contract on ground that requirement of statute of frauds has not been complied with, where vendor admits the agreement and is willing to perform it, and purchaser is alike willing to accept such performance.'

"It is the insistence of complainant that on the day the parol agreement was reduced to writing and recorded the

grantor did not receive a fair consideration, and the conveyance left the grantor without sufficient assets to meet complainant's unliquidated tort claim, and hence was in violation of the Uniform Fraudulent Conveyance Act.

''The foregoing review of cases, covering parol agreements to convey, laid down the rule that parol agreements may be validated at any time the parties are ready, willing and able to perform or where in a pending action both parties agree upon the facts and neither seeks to repudiate. Once validated, the agreement is good from its inception. The solvency test and that of a fair consideration should then be applied as of the date of the parol agreement. At that time, more than a year prior to the accident, Mr. Caldwell had no creditors, was not engaged in business and had no reason to anticipate that complainant would become a creditor. He then had a right to make an outright gift of his property to his daughter. It is not necessary to pass upon the financial status of Mr. Caldwell on March 16, 1959, except to make the observation that, after conveying the land to his daughter, he was still possessed of a $6,000.00 asset set up to satisfy any claim that might ultimately be established by complainant in a later suit for damages. There is nothing in the record to indicate that, as of March 16, 1959, $6,000.00 could not have been considered an adequate reserve for the settlement of complainant's claim for unliquidated damages. That $6,000.00 asset was not so small, in comparison with the existing indebtedness, that the grantor could reasonably have contemplated that it would not satisfy complainant's claim. It follows that

this Court finds that the conveyance by Mr. Caldwell to his daughter was not fraudulent.

"October 25, 1960.

"(Signed)   M. B. Finkelstein
"Chancellor—Part 2"

Referring now to Oliphant v. Moore, supra, it is quite distinguishable from the instant case. The case was heard on demurrer to the original bill and the demurrer was sustained by the Chancellor. In the Opinion by Justice Swiggart of the Supreme Court, he said:

"The bill avers the fraudulent disposition by C. T. Moore of all his property subject to execution, except a certain house and lot, *after the institution of the suit at law,* for the purpose of fraudulently defeating any judgment which Oliphant may be able to secure in said action." (Emphasis ours.) [155 Tenn. 359, 293 S. W. 541].

It is further revealed by that Opinion that the bill charged every element of fraud necessary under the Fraudulent Conveyance Act and the Opinion simply determined that the Chancellor erred in sustaining the demurrer and remanded the cause for further action consistent with the Opinion. In the instant case the Chancellor heard all of the proof and rendered his Opinion based thereon as hereinabove set out.

In Babirecki v. Virgil, supra [97 N.J. Eq. 315, 127 A. 595], the deed in question was made on May 5, 1921, after the action upon which the judgment was obtained had begun or was instituted on April 2, 1921. Furthermore that deed simply recited a consideration of $1 and other

valuable considerations, and there was attached only a $1 revenue stamp. In the course of the trial the defendant was being asked, ''wasn't the consideration, the true consideration, then mentioned in the deed?'' Also she was asked, ''why was there only a $1 revenue stamp attached to the deed instead of the legal fee of $2.50?'' In addition there was a controversy about an agreement which had been entered into for the conveyance of the property, in writing, dated August 16, 1917. This defendant was asked, ''Now when was this agreement drawn?'', and further, ''And did you use the same pen?'' The trial Court would not permit the defendant to answer either question. The Court of Errors and Appeals of the State of New Jersey said this, ''for the reason that testimony which might have been material to the issue and which might have been, if adduced, important in determining the merits of the controversy, was excluded, this case will be sent back to the Court of Chancery for a rehearing * * the decree of the Court of Chancery is reversed.'' It should be said that the Chancellor had dismissed complainant's bill. Certainly there is a valid distinction between that case and the instant case.

In Ashbaugh v. Sauer, supra, there were two cases consolidated and tried together. One was by an attorney for his fee for services rendered from December 1, 1930 to September 1, 1931. Judgment was rendered in favor of the plaintiff on March 22, 1933. On May 24, 1932, Constance Sauer had given a quitclaim deed to five city lots which were a part of a trust agreement by Constance Sauer for the benefit of her sons. In the other case Constance Sauer was a vendee. She defaulted in her payments of the debt in June 1931. Suit was brought for the default payments and a judgment was obtained on Decem-

ber 27, 1932. In neither case was there a levy on the involved lands until after the quitclaim deed had been made. The defendants offered no evidence. The plaintiffs introduced documentary evidence to support their cases. The answer of defendant admitted that Constance Sauer owned no other substantial property subject to execution.

The only possible relationship of those cases to the instant case is the fact that the Court determined that the plaintiffs were considered creditors of the defendant at the time these conveyances were made and protected by the Fraudulent Conveyance Act, the Chancellor had sustained the contention of the plaintiffs, there being no proof offered by the defendant and the Supreme Court of Michigan affirmed that judgment.

In the Chancellor's decree he permitted the injunction issued on application of the complainant and the attachment to remain in full force and effect pending the appeal. He also directed that the injunction bond and the attachment bond of complainant would remain in full force and effect pending such appeal.

We are thoroughly satisfied that the opinion and decree of the Chancellor are correct. His decree is affirmed, the attachment and injunction issued below should be and is dissolved. Judgment will be entered for cost against the complainant and his sureties on his appeal bond for all the costs in this Court.

Carney and Bejach, JJ., concur.

## On Petition to Rehear

Petition to rehear has been filed in the above styled cause upon the theory that this Court nor the Chancellor gave no consideration to T. C. A. sec. 64-312.

A review of the opinion of the Chancellor and of this Court clearly shows that consideration was given and completely determined by the decree of the Chancellor which this Court approved, and, therefore, was determined by this Court. The last sentence in the decree of the Chancellor is as follows:

"It follows that this Court finds that the conveyance by Mr. Caldwell to his daughter was not fraudulent."

The plain language used in that statement clearly means that it was neither fraudulent in fact nor in law.

It might be further said that we gave consideration in our opinion to every case relied upon by counsel for appellant, and nothing new has been brought to the attention of this Court by the petition to rehear. This petition to rehear further indicates our opinion in this case is in conflict with the opinion of the Middle Section in Cooper v. Cooper, reported in 22 Tenn.App. 473, 124 S.W.(2d) 264.

The question of conflict in the opinions of different Sections of this Court is a matter for consideration of the Court en banc, when in the opinion of the Presiding Judge such should be had for a determination of the correctness of the opinion from the respective Divisions.

The petition to rehear is overruled at the cost of appellant. Enter decree accordingly.

Carney and Bejach, JJ., concur.