## SANDERS *v.* LOGUE.

*(Nashville.   January 4, 1890.)*

1. VOLUNTARY CONVEYANCE.    *Valid if sufficient assets retained by donor to meet his debts.*

   Voluntary conveyance, made without any fraudulent purpose, is valid against all creditors of the donor, if he has retained assets sufficient at its date to meet his existing debts.

   Cases cited: Farnsworth *v.* Bell, 5 Sneed, 531; Patrick *v.* Ford, 5 Sneed, 532; Vance *v.* Smith, 2 Heis., 343, 350.

2. SAME.    *Same.    What debts to be provided for.*

   But a possible liability of the donor for fraud in sale of land, which has not been asserted by suit or demand, is not such a debt as the donor is required to retain assets to meet.

   Case cited: Arendale *v.* Morgan, 5 Sneed, 703.

3. DECREE.    *Coram non judice.*

   A decree is inoperative and void so far as it undertakes to adjudicate matters not within the scope of the pleadings.

4. STATUTE OF LIMITATIONS.    *Seven years.*

   Seven years' continuous adverse possession of land, held in part under a verbal gift, and in part under deed made in confirmation of such gift, gives to the possessor such possessory right, under the second section of the Act of 1819, as will enable him to defeat an action brought to recover the land.

   (See Code: §§ 3460, 3461 (M. & V.); §§ 2764, 2765 (T. & S.)

---

FROM WILSON.

---

Appeal from Chancery Court of Wilson County. GEO. E. SEAY, Ch.

J. C. SANDERS and J. S. GRIBBLE for Sanders.

R. McMILLAN, TARVER & GOLLIDAY, and A. S. MARKS *contra.*

SNODGRASS, J.　This is a bill to set aside certain conveyances of John Logue to his children, as voluntary and fraudulent, and to subject the property to satisfaction of a decree for $2,787.61 and cost, which complainant obtained against John Logue in the Chancery Court of Wilson County on November 5, 1886.

The bill under which this decree was had was filed March 9, 1885. There were several conveyances attacked in the present suit, but the validity of only four of them is now in controversy, the decree not being complained of in respect to two of the six included in the bill, and which the Chancellor held could not be affected in this proceeding. The defendants claiming the four first mentioned, put by proper denial the questions of voluntary conveyance and fraud in issue, and relied upon the statute of limitations of seven years, claiming to have had seven years' possession of the lands conveyed to them.

It appeared in evidence that Defendants Bell and Northcut had been for more than seven years in possession of their lands; but, prior to October 10, 1883, and January 25, 1884, had been holding under verbal gifts with promise of deeds by John Logue, not, in fact, executed until the dates stated.

But the lands claimed by them were and had been, during their possession and occupancy, inclosed, and they established their holding for themselves by the preponderance of the evidence, and insisted that as to these lands complainant was entitled to no relief, even had their deeds been fraudulent or voluntary. No such possession of the lands deeded to Alice Logue and N. G. Omahundro was shown prior to their deeds (October 10, 1883), and, as to them, the only question is the validity of the deeds.

The Chancellor held these four deeds voluntary and void as to complainants, and the defendants claiming under them appealed and assigned errors.

There was no reasonable pretense that these conveyances were fraudulent in fact, and the Chancellor did not commit the error of so finding. He concluded and 'decreed that they were fraudulent because Defendant Logue "did not retain sufficient property at the time he made them to pay his liabilities." In this estimate of liabilities he necessarily included that of complainant, because, without including it there is no reason for such assumption. On any theory the property he retained was ample to satisfy his other debts. It is therefore necessary to determine whether complainant's present claim was such a debt as requires the reservation of property to pay before a voluntary conveyance will be valid. At the date of the conveyance the complainant was, in fact, the judgment debtor of Defendant Logue under

decree of Chancery Court of Wilson County, pronounced at its March term, 1881, for $1,455.95, with interest from date of the decree.

A part of this recovery, however, had been upon notes executed by Sanders to Logue, in consideration for certain lands bought of him in 1873, and for the conveyance of which, by *quitclaim* deed, Logue had bound himself to Sanders in a title bond.

In 1879, J. M. Horn having cut and removed timber from a part of this land, Logue, who still held the legal title, filed a bill against him and others, including Sanders, to enjoin him, restrain waste, and have Horn's title declared a cloud on his own. He obtained a decree in the Chancery Court at Lebanon on October 25, 1880, in accordance with the prayer of his bill. From this decree Horn appealed.

The Commission of Referees heard the case, and reported, December 15, 1883, in favor of reversing the decree and dismissing the bill, basing their conclusion and report upon the reasoning that Horn's claim was under a judgment, execution, and sale of the land as the property of one Drennan, and Logue was the fraudulent vendee of Drennan, and therefore a Court of Equity should repel him. This report was confirmed by the Supreme Court on December 5, 1884. In the decree of confirmation entered it is, among other things, recited that Logue, " in procuring title to said lands, was guilty of actual and positive fraud in attempt-

ing to aid Drennan in concealing his effects from his creditors and in violating his obligation with Drennan; and his title to the land is *declared* fraudulent and void." It adds: "He is therefore entitled to no relief under his said bills, and the same are therefore dismissed at his cost."

We have quoted this decree because much stress has been laid upon it as extinguishing Logue's title. It did nothing of the kind; and, while the decree is flush of terms strong enough to effect such a result, it could not be or have been done in any terms upon such a bill. An ejectment bill, or bill to restrain waste, or to remove a cloud, cannot operate as a boomerang and destroy for all purposes the title of the complainant, however sounding the phraseology in which it may be inaptly expressed, in decrees whose precise verbiage cannot always be noticed or shaped by any Court in the very nature of things under our practice; but the decree meant no more than that his title was void as to defendants, and was such a one that as against defendants the Courts would not enforce. However, that question is no longer of any importance, because, after this decree Sanders filed a bill against Logue, alleging that Logue had fraudulently represented to him he had a title to the land in controversy when he purchased, and it was upon the faith of such representation he bought and took a quitclaim deed; that he had paid Logue much money, and Logue's decree in 1881 (before mentioned) was based on his pur-.

chase. He alleged that his title had been declared
fraudulent and void, and sought to set aside that
decree and recover of Logue the amounts he had
paid him since his purchase in 1873, with interest;
and it was in this case and under these allega-
tions that his decree was obtained, for the col-
lection of which he filed this bill, the decree, as
before stated, being obtained on November 5, 1886.
It appears, from this statement of facts, that
Sanders neither had any recovery for the fraud
alleged to have been committed in taking his
money upon false representation as to title, nor
did he have any action pending therefor when
these conveyances were made; but that, instead, he
was the judgment debtor of Logue in a decree in
nowise complained of. But he insists that, in-
asmuch as he had a right of action for the money
received of him in consequence of the fraudulent
representations of Logue, his was an existing de-
mand at the time, and such a one as must be
considered in determining the validity of the con-
veyances. It is, of course, true that a conveyance
of property to defeat an expected recovery in an
action of tort already commenced is fraudulent in
fact and void. *Bell* v. *Farnsworth*, 5 Sneed, 531,
532; *Patrick* v. *Ford*, 5 Sneed, 531, 532.

And we may add that we think it equally
clear that a voluntary conveyance pending an
action of tort, whether actually intended to defeat
it or not, would be void if, upon estimating the
amount of property retained, there was a deficiency

Sanders *v.* Logue.

to pay the amount claimed. It may be true, also, that a conveyance for the fraudulent purpose of defeating a recovery in an action of tort anticipated would be void. But, as we have said, we are not now dealing with any question of actual fraud. We are discussing the question whether a deed made in good faith, in the absence of any debt known or asserted, makes a deed fraudulent in law, and we have no hesitation in holding that it does not. In the case we are now considering, whether we treat the complainant as repudiating his contract because he was fraudulently induced to make it, and suing for the money as for money had and received to his use, or whether we treat the action as one for damages incurred in consequence of the fraud and deceit practiced upon him, measured by the money paid and interest, the result is the same. In the first aspect, he would have had no action until he disaffirmed the trade and demanded his money (*Arendale* v. *Morgan*, 5 Sneed, 703); and in the second his action would have been *ex delicto*, and not upon a specific, fixed, or asserted liability within the meaning of the rule stated in respect to voluntary conveyances. Such a claim, it is obvious, might or might not ever be asserted, and it is too uncertain and remote to be taken into consideration in estimating the debts or liabilities of a debtor for which he must provide by retention of property. This is made obvious if we look at the state of affairs then existing, not as now developed.

Suppose Sanders had never in fact sued. His right, whatever it is, would exist, of course, and would have been existing when these deeds were made. Now, assume that one of the other creditors of Logue had filed a bill to set these deeds aside as voluntary, and had endeavored to show that Logue's liabilities exceeded his assets retained. To make this appear, he attempts to show that Logue owes Sanders a large debt. Logue produces his decree against Sanders, and shows that Sanders is then indebted to him; but the creditor insists that, notwithstanding the appearance of the facts, in reality they were to the contrary, and Logue was largely indebted to Sanders on account of his fraudulent misrepresentations. Logue insists, too, that Sanders has preferred no claim, and seeks to establish none against him. But the creditor answers: "That makes no difference; he may do so hereafter, and if I can show a state of facts which will justify a suit, I must count it, or whatever I can prove ought to be the amount of his recovery, as one of the liabilities for which you must provide by retention of property, or your deed is fraudulent." This is just the result to which we must come if we hold the decree correct.

It must not be forgotten that we are dealing altogether with the theory and principle involved. These must determine the validity of the deed, and not the subsequent results. In deciding whether this now established liability should have been then provided for we must look to the con-

dition of things when we could have been first asked to do it—when these deeds were made. We are not dealing with the question as to Sander's present established demand. We are determining whether it was then in such situation as to be accounted a debt for which the voluntary vendor must have provided.

Another view shows still more strongly the absurdity of holding that unestablished, uncertain equities or rights of action are the debts contemplated under the rule. If a right of action for fraud, or misrepresentation, or unasserted breach of warranty was contemplated as among the liabilities for which a voluntary vendor must provide before he can make a valid conveyance, whenever this question arose creditors could show any conveyance he might have made, and insist (if, as in this case, it was a bond for a quitclaim deed, or in fact a quitclaim deed) that he owed that alleged creditor because there was a fraudulent imposition on him; if the conveyance was executed with covenants, he would allege indebtedness arising to that vendee from breach of covenant already made or anticipated. Each case would be a lawsuit in itself to see if a debt existed which no one claimed, and the result would be endless strife and confusion.

So, too, the inquiry would be open whether he had killed or injured any person, or committed assault and battery, or committed any wrong about which no claim was made, and had not reserved

property to meet their demands if they made demand. It would be an object of further inquiry if he had defrauded any person in any way, and might be sued on this account.

It is clear that the rule of which we are treating, which practically provides for the taking of an account of the property and debts of the voluntary vendor to ascertain whether he has reserved ample property for the payment of his debts, has in contemplation no such possible claims as the one we are considering and those referred to by way of illustration. The debts contemplated are specific and asserted liabilities, susceptible of accurate ascertainment—those of which an account might be taken, and which may be definitely determined.

It is true, as we have already seen, that a plaintiff in an action of tort commenced is a creditor within the meaning of our statute prohibiting conveyances with fraudulent intent to defeat creditors (5 Sneed), and so of one in that relation that he is secured in a deed of trust which includes "all creditors." *Vance* v. *Smith*, 2 Heis., 343, 350.

But, even in respect to such "creditor," after suit brought, it is held that his claim is not a "debt" within the meaning of our Constitution prohibiting impairment of validity of debts, and hence that the homestead which could be subjected to the payment of *debts* created before the homestead law, could not be sold to pay a judgment

recovered in such action after the law, although the action was commenced before. This case reviews the several cases cited on the subject of "creditors" in actions against fraudulent conveyances, and leads logically to the position now taken by the Court, except that in this case it is not necessary to go so far as was done in that. Here it is only held that the right of action for tort or damages for fraudulent misrepresentation is not a debt *before* suit brought; there it was held not to be a debt *after* suit brought.

In addition to the validity of their deeds insisted upon by Bell and Northcut, they also relied, as before stated, upon the statute of limitations of seven years as protecting them in their possession, and this defense they made out in evidence. We hold that they are protected by such possession, and that possession by a donee before deed of inclosed land may be coupled with possession of same land after deed, to make out the seven years required to give him a possessory right under Section 2 of the Act of 1819.

It does not, of course, matter that they held in expectation of a deed or afterward took a deed. Neither the holding and claim in expectation, or the acceptance of the deed, was inconsistent with their claim and possession as donees. Either a vendee or donee may take and continue such possession until his deed is executed, and then accept it in furtherance of his contract and claim, and not in destruction of it.

The recital in such deed that the vendor is owner, is but the recital of a fact which no one denied, and which it is not an inconsistency to admit. The donee or vendee claims the land, but says: "The vendor, while he has transferred it to me, has not yet given me the evidence of my title. The legal title, therefore, remains in him; but I have an arrangement with him by which I claim to be the owner and have the right of possession."

We are not now treating of title under the first section of the Act referred to. A claim under that has to be under title or color of title. Here it need not be. It is sufficient if the donee be in possession of inclosed lands for seven years, claiming it no matter how or by how many different means. It is the assertion of his right, coupled with adverse possession for seven years, which protects him from suit after that time.

The decree as to the appellants claiming the lands is reversed, and as to them the bill is dismissed with cost.