# SCARBOROUGH v. PICKENS et al., No. 1.—170 S. W. (2d) 585.

Eastern Section.   December 28, 1942.

Petition for Certiorari denied by Supreme Court, April 3, 1943.

214

R. A. Davis, of Athens, for Frank Pickens et al., appellants.

Mayfield & Mayfield, of Cleveland, for Anna Scarborough, appellee.

BURNETT, J. This is a suit to set aside as fraudulent a conveyance executed by Frank Pickens to his brother, J. P. Pickens, and to have said lands sold and proceeds applied to the payment of the complainant's judgment against Frank Pickens.

Simultaneous with the 'filing of this bill on March 18, 1929, the complainant filed a suit for damages in the Circuit Court of Polk County. She sued for breach of promise to marry and for seduction. This suit resulted in a judgment for the plaintiff which was in due season affirmed by the Supreme Court.

The Pickens brothers died pending this litigation after the circuit court judgment, and the instant case was revived against their administratrix and the heirs at law of J. P. Pickens. Before the death of the Pickens brothers they both answered the instant suit denying in toto the allegations of the bill. They also filed pleas in abatement to said bill along with their answer. The administratrix and heirs likewise filed answer denying any and all allegations of fraudulent intent in the conveyances attacked.

The deeds to the properties were made and acknowledged on November 19, 1928. They were not prepared by an attorney. These deeds were recorded, one on the

day executed and the other on the following day. These deeds recite a consideration *"for taking care of me during my natural life and burial expenses"* (italics ours). The bill in the instant case attached the property as described in these deeds; an injunction against transfer, etc., was likewise issued.

Frank Pickens had been keeping company with complainant some time prior to the making of these deeds and had promised to marry her. In their love affair he had apparently seduced her and begotten a child which was born prior to the filing of this bill but subsequent to the execution of the deeds. She had informed him of her condition and asked that he immediately marry her. Apparently he had refused when early in November before the execution of the deeds she had informed him she would see a lawyer. Shortly after this Frank made the deeds to his brother for his one-half individual interest in the property as described in the bill and deeds.

At the time the deeds were made Frank was in poor health. He worked on the farm some, in the spring and summer, after the deeds were made. The complainant denies any knowledge of his poor health but the burden of proof shows that he was not well.

Frank had lived with his brother, J. P. Pickens, for many years prior to this conveyance. The proof fails to show that J. P. had any knowledge of Frank's love affair with the complainant. It is stipulated that a reasonable allowance for Frank's board, during the four months after he deeds were made and this suit brought, was Twenty-Five ($25) Dollars per month. Frank became very sick within a year after these deeds were made, lost his mind and died about two years after the execution of the deeds. The defendants spent consider-

able money in an effort to cure him and in his burial and for a tombstone. All of this happened though after the institution of the instant suit. These are the facts as they appear in the record. They are in substance what the chancellor found. In his finding we fully concur.

Able counsel for the defendants relies primarily in argument, before this court, on his first assignment of error. The assignment is based on the holding of our Supreme Court in Sanders v. Logue, 88 Tenn. 355, 12 S. W. 722. It is, in effect, that J. P. Pickens took this property for the consideration as expressed in the deed, with no knowledge of any right of action in tort which the complainant had, and because the complainant was not a creditor, and did not institute suit until more than four months after the execution of the deeds. We are unable to agree with this contention.

Many years after the decision in the case of Sanders v. Logue, supra, the legislature passed what is known as the ''Uniform Law Relating to Fraudulent Conveyances,'' Acts 1919, Chapter 125, now carried in the Code as Sections 7271-7282. This act and various sections thereof have been before our Supreme Court many times. The terms ''creditor'' and ''debtor'' are defined in Section 7271 of Code of 1932 as follows:

''Definition of terms.—In his article 'assets' of a debtor means property not exempt from liability for his debts.

''To the extent that any property is liable for any debts of the debtor, such property shall be precluded in his assets.

'' 'Conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage, or pledge

of tangible or intangible property, and also the creation of any lien or encumbrance.

"'Creditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent.

" 'Debt' includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."

Other pertinent Sections of the Code are 7274 and 7273, reading:

"Conveyances by insolvent.—Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."

"Fair consideration.—Fair consideration is given for property, or obligation, (a) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) when such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

■ This act as carried in the Code, Sections 7271-7282, does not repeal Section 7832 of the Code but merely enlarges thereon as heretofore pointed out. See Bowery v. Vines, 178 Tenn. (14 Beeler), 98, 103, 156 S. W. (2d) 395.

■ We think it clear that Frank Pickens intended to do away with his property so that complainant could not get her hands on anything. He did denude himself

of everything he had. It is true this record shows that J. P. Pickens, the grantee, knew nothing of this.

"Under the Uniform Fraudulent Conveyance Act, if the debtor intended to defraud 'either present or future creditors', the transaction is 'fraudulent as to both present and future creditors.' " 24 Am. Jur., page 285, Sec. 143; Code, Sec. 7277; McDonald v. Baldwin, 24 Tenn. App. 670, 675, 148 S. W. (2d) 385.

■ Under Section 7274 of the Code, above quoted, regardless of the intent of Frank Pickens, the conveyance was fraudulent as to creditors. Complainant is a creditor. See Sec. 7271 Code, above quoted; McDowell v. Rees, 22 Tenn. App. 336, 352, 353, 122 S. W. (2d) 839.

"While the probative effect of the fact in question is held by some of the authorities not to be affected by the fact that the transferee acted innocently or with good motives, other authorities hold that a presumption of an evil intent on the part of a grantee who accepts a conveyance of property in which a benefit is reserved cannot be indulged in the absence of some further fact than the reservation itself." 24 Am. Jur., Sec. 30, page 189.

"Ordinarily, a transfer of property in consideration of future support is held to be invalid, at any rate, as to existing creditors whose rights are prejudiced by such transfer. Thus, the transaction must be held to have been illegal where it appears that the transferrer or grantor did not retain sufficient assets to pay his debts, as where he executed a conveyance of all his property." 24 Am. Jur., Sec. 35, page 193.

Counsel likewise cites and relies on Rosen v. Levy, 120 Tenn. 642, 113 S. W. 1042, as authority for the above assignment. This case is not applicable here. In the Rosen case no right of action existed at the time the

conveyance was made. Rosen had been indicted by Levy but there had been no termination of the pending criminal action at the time of the conveyance. He was in no sense a creditor of Levy.

▉ Bad health is a good reason for one to dispose of his property as he wishes and for his protection. Bad health is no excuse, which will be recognized in law, for one to denude himself of his property to the detriment of his creditors.

▉ In view of our conclusions as heretofore set forth, we see no reason why we should pass on the question of the evidence objected to. These statements of the complainant would not affect the result one way or another. If it was error to admit them it was no more than harmless error. Pennsylvania R. Co. v. Naive, 112 Tenn. 239, 268, 79 S. W. 124, 64 L. R. A. 443; 1932 Code, Sec. 10653.

" 'Laches' involves more than a mere lapse of time and requires an element of estoppel or neglect which has operated to the prejudice of defendant." Words and Phrases, Perm. Ed., Vol. 24, page 97.

The instant suit naturally lay dormant pending the outcome of the common law suit. On this question counsel have stipulated as follows:

"That this case has been continued several times because of the unavoidable absence of defendants' solicitor when complainant desired to take proof; and that complainant has further not pushed for a trial because she had been advised that if entitled to a sale of the real estate, the time has not been right for an advantageous sale during the past several years."

▉ Counsel for the parties in this suit are two of Tennessee's most able lawyers. They do not attempt to make any showing that either was dilatory in this

prosecution. Their stipulation forecloses this question.

■ Any expenditures made by J. P. Pickens or his administratrix after the filing of the instant bill were mere voluntary expenditures. They had notice of the instant claim. They have had the benefits of this property all that time. They made no offer to deed the property back to Frank Pickens when this suit was filed. They had assumed no burdens that could not have very easily been set aside on the filing of this bill. Frank Pickens helped work this farm about that time. It is apparent they expected to benefit and tried to hinder Frank Pickens' creditors to their advantage. These facts being as they are we feel that the defendants should be charged with the reasonable rental value of the property from the date of the filing of this bill to the date of accounting by the Clerk and Master. The defendants should be allowed to off-set this item by a credit for taxes paid on this property during the period. See Renshaw v. First National Bank, Tenn. Ch., 63 S. W. 194, 208; Johnson v. Covington, 148 Tenn. 47, 65, 251 S. W. 893.

■ The funeral expenses of Frank Pickens would have been a preferred claim against his estate. Sec. 8286, Code 1932. Frank Pickens having died before the common law judgment became final and before the complainant subjected this land to the payment of her judgment, the funeral expenses paid by defendant should be allowed.

All of the assignments of error being overruled, the decree of the chancellor is affirmed. The costs of the lower court will be as decreed by the chancellor. The costs of appeal will be adjudged against the appellants and their surety on the appeal bond. The cause will be remanded for the enforcement of the decree as entered below.