NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0623n.06
Filed: August 23, 2006

**Nos. 04-6334, 04-6335**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TARECO PROPERTIES, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KAREN MORRISS, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant, (04-6334) | ) | |
| | ) | |
| AMY MORRISS LOWRY; ROBERT DAVID | ) | |
| LOWRY, | ) | |
| | ) | |
| Defendants-Appellants. (04-6335) | ) | |

Before: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Defendants Amy Morriss Lowry, David Lowry, and Karen Morriss

appeal the district court's judgment, after a bench trial, in favor of Tareco Properties, Inc. on

Tareco's claims of fraudulent conveyance and conspiracy under Tennessee law. The defendants

received hundreds of thousands of dollars from Steve Morriss, a relative, while Morriss was subject

to a large judgment. On appeal, the defendants argue that: (1) Amy Morriss Lowry should not be

liable because the district court found that she lacked the intent to commit fraud; (2) the defendants

should not be liable for the portion of the fraudulent conveyance that was transferred back into Steve

Morriss's companies; (3) Karen Morriss's liability should be reduced by the amount she spent on

living expenses; (4) Karen Morriss's liability should be limited to the amount she actually spent; and

(5) the equitable doctrines of estoppel and laches bar recovery because Tareco, through its

representatives, knew of Steve Morriss's use of the Amy Morriss account as early as 1994. We

affirm.

## I. Background

In 1993, the FDIC obtained a judgment in a federal district court against Steve Morriss and

others for almost two million dollars. The FDIC never received any money from Morriss, and it

ultimately assigned the judgment to Tareco.

Around the same time, Steve Morriss set up a bank account in the name of his daughter, Amy

Morriss Lowry. Steve Morriss generally used the account as if it were his own—for example, by

depositing checks and later obtaining funds for his business activities—but he did not retain the

authority to sign checks. Instead, the signatories on the account were Amy Morriss Lowry; David

Lowry, Amy Morriss Lowry's husband; and Karen Morriss, Steve Morriss's wife.

According to the district court in this case, Morriss deposited a total of $816,285.97 into the

Amy Morriss account since May 5, 1996. Much of the money appears to have been spent by the

defendants. Karen Morriss spent approximately $111,237.83 on personal, credit card, and

entertainment expenses. Amy Morriss Lowry, while having "no clue" why her father was depositing

checks into her account, also appears to have used the money. In addition, as Steve Morriss's

employee, David Lowry wrote checks for Steve Morris's business expenses. As much as $273,700 was transferred from the Amy Morriss Account to entities owned by Steve Morriss.

In September 1999, Tareco purchased the FDIC judgment. Tareco had been incorporated earlier in the year, and it learned of the judgment through Steve Morriss's former business partners. One such partner, Robert Geringer, had used the Amy Morriss account as early as 1994. Geringer received a check for $6,310 drawn from the account. His law firm also made several deposits into the account through wire transfers. Although Geringer was Tareco's representative at trial in the present proceeding, Geringer was not an officer or director of Tareco, never owned stock in Tareco, and did not have any otherwise formal relationship with Tareco.

Tareco immediately began trying to collect the FDIC judgment from Morriss. Years of litigation followed, involving claims, counterclaims, sanctions, and multiple state and federal jurisdictions. Nevertheless, in July 2000, Morriss agreed to transfer ownership of eight of his companies to Tareco in partial satisfaction of the judgment. Although Morriss later tried to challenge the agreed order, this court affirmed the district court's decision upholding the order. *See Tareco Props., Inc. v. Morriss*, 321 F.3d 545, 548-49 (6th Cir. 2003).

In May 2000, Tareco brought suit against the defendants in the United States District Court for the Middle District of Tennessee. In its complaint, Tareco asserted two causes of action. First, Tareco claimed that the defendants were liable under Tennessee's Uniform Fraudulent Transfer Act (Uniform Act), Tenn. Code Ann. §§ 66-3-301 to -313, because "Steve Morriss transferred cash, real

estate, stock in various companies owned by him and other property owned by him . . . to the

defendants for the express purpose of delaying, hindering, defrauding, and preventing the plaintiff

from collecting" the FDIC judgment.[1]  Second, Tareco claimed that the defendants had engaged in

a conspiracy with Steve Morriss to engage in fraudulent transfers of the assets.  Karen Morriss filed

a counterclaim and third party complaint that was later dismissed.

The case went to trial in March 2004 before a United States Magistrate Judge.  The court

ruled that the Tennessee statute of limitations precluded Tareco from challenging any conveyances

made prior to May 5, 1997.  The court then found the defendants liable on Tareco's two claims.

First, the court ruled that the deposits by Steve Morriss into the Amy Morriss account after May 5,

1997, were fraudulent conveyances.  The court reached this conclusion after finding that the

following "badges of fraud" showed an intent to delay, hinder or defraud creditors:  Steve Morriss

made the deposits while "in a precarious financial condition" and knowing that a large judgment had

been rendered against him; inadequate consideration was given for the transfers; and a family

relationship existed between Steve Morriss and the transferees.

Second, the court ruled that Karen Morriss and David Lowry were liable as co-conspirators

in the fraudulent conveyances.  Amy Morris Lowry was not a co-conspirator because "the testimony

---

[1]Both Tareco and the district court use the Tennessee fraudulent statute based on the English Statute of 13 Elizabeth, Tenn. Code Ann. § 66-3-101 to -104, and the Uniform Act interchangeably. It makes no difference because the statutes' definitions of a fraudulent transfer are identical for relevant purposes.  The Uniform Act did not repeal but merely enlarged the scope of the earlier statute. *Scarborough v. Pickens*, 170 S.W.2d 585, 587 (Tenn. 1942).  For easier reference, we refer only to the Uniform Act.

at trial showed that she lacked the requisite intent." The court thus entered judgment, jointly and severally, against all three defendants for $681,149.79, "the amount [Steve] Morriss deposited into the 'Amy Morriss' account since May 5, 1997."

The defendants now appeal. Although they do not challenge the district court's finding that the deposits were fraudulent conveyances, the defendants argue that: (1) Amy Morriss Lowry should not be liable because the court found that she lacked the intent to commit fraud; (2) the defendants should not be liable for the portion of the fraudulent conveyance that was transferred back into Steve Morriss's companies; (3) Karen Morriss's liability should be reduced by the amount she spent on living expenses; (4) Karen Morriss's liability should be limited to the amount she actually spent; and (5) the equitable doctrines of estoppel and laches bar recovery because Tareco, through its representatives, knew of Steve Morriss's use of the Amy Morriss account as early as 1994.

## II. Analysis

We review conclusions of law de novo, *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996), and factual findings for clear error, Fed. R. Civ. P. 52(a).

### A.      Amy Morriss Lowry's Liability

Amy Morriss Lowry is liable for the fraudulent conveyances as a transferee under the Uniform Act even if she did not intend to commit fraud.[2] The Tennessee Code provides that a creditor, in an action to recover a fraudulent transfer, may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Tenn. Code. Ann. § 66-3-308(a)(1). To the extent such a transfer is voidable, the creditor may obtain a judgment against "*[t]he first transferee of the asset* or the person for whose benefit the transfer was made." § 66-3-309(b)(1) (emphasis added). Because Steve Morriss fraudulently conveyed money into the Amy Morriss account, and because Amy Morriss Lowry, as owner of the account, was the "first transferee," Amy Morriss Lowry is liable for the transferred money.

The defendants' argument—that Amy Morriss Lowry should not have been held liable because the district court found that she "lacked the requisite intent to be a co-conspirator"—is without merit. There is nothing in the Uniform Act requiring fraudulent intent; the statute is silent as to scienter. *Cf. Bowlin v. Comm'r*, 273 F.2d 610, 611 (6th Cir. 1960) (holding, without discussing intent, that a wife who received cash from her insolvent husband was a transferee and thus liable under a previous Tennessee fraudulent conveyance statute). Moreover, courts interpreting identical statutes from other jurisdictions have held that there is no intent requirement for transferee liability. *See, e.g.*, *Warfield v. Byron*, 436 F.3d 551, 557-58 (5th Cir. 2006) (holding that Washington's

_____

[2]At oral argument, counsel for the defendants indicated for the first time that Amy Morriss Lowry's liability had been discharged through bankruptcy. Without any evidence that her debt to Tareco has been properly discharged, we decline to decide whether the appeal as to Amy Morriss Lowry has been rendered moot.

Uniform Fraudulent Transfer Act "permits entry of judgment even without proof that the transferee knowingly accepted property and intended to assist the debtor in evading the creditor"). The district court therefore properly found Amy Morriss Lowry liable as a transferee despite its finding that she did not intend to participate in a fraudulent conveyance.

**B.      Funds Returned to Steve Morriss's Companies**

The district court did not err by holding the defendants liable for the money that was later transferred back into various companies owned by Steve Morriss because the defendants failed to satisfy their burden of proving that any of the money benefitted Tareco. The district court found the defendants liable for the total amount fraudulently conveyed to the Amy Morriss account because the defendants were transferees of the fraudulently conveyed money and Karen Morriss and David Lowry were conspirators with Steve Morriss. The defendants, however, argue that the "evidence is insufficient" to support the judgment for the $273,700 that they later transferred to Steve Morriss's companies because that money "was not placed in [the Amy Morriss] account for the personal benefit of the Defendants." This argument fails as a matter of law. The district court was not required to find that the money was transferred for the personal benefit of the defendants. Instead, it was sufficient for the court to find that the defendants were transferees, *see* § 66-3-309(b)(1), and with respect to Karen Morriss and David Lowry, in the alternative, that they were conspirators with Steve Morriss, *see Dale v. Thomas H. Temple Co.*, 208 S.W.2d 344, 353 (Tenn. 1948). The defendants were therefore liable for the full amount that Steve Morriss fraudulently conveyed to the Amy Morriss account.

Although the district court had the discretion to reduce the defendants' liability as it found equitable, the defendants failed to meet their burden of proving that a reduction was warranted. The Uniform Act provides that judgments based upon the value of the asset transferred "must be for an amount equal to the value of the asset at the time of the transfer, *subject to adjustment as equities may require*." § 66-3-309(c) (emphasis added). Thus, if the defendants proved that they transferred the $273,700 back into the companies, and that Tareco received that money when it later obtained those companies pursuant to the July 2000 order, the court could have reduced their liability accordingly to avoid conferring a windfall upon Tareco.

A similar result was reached in *Dahar v. Jackson* (*In re Jackson*), 318 B.R. 5, 27 (Bankr. D.N.H. 2004). In *Dahar*, a transferee used some of the proceeds from her sale of fraudulently conveyed property to pay the transferor's business and family expenses. *Id.* at 28. The court found that, under the damages provision of the New Hampshire fraudulent conveyance statute, which was identical to § 66-3-309(c), the transferee was entitled to an equitable reduction of her liability for her payments of the transferor's expenses. *Id.* at 26-28. Without a reduction, the plaintiff would have received a windfall because he essentially would have recovered twice for some of the money fraudulently conveyed: the money the plaintiff paid pursuant to the judgment for the fraudulent conveyance and the additional money in the transferor's estate that resulted from the transferee paying the transferor's expenses. *Id.* at 27-28.

But even assuming that Tennessee courts would equitably reduce a transferee's liability under circumstances similar to those in *Dahar*, the defendants are not entitled to such a reduction

because they failed to prove that Tareco actually received the $273,700. The defendants conceded

at oral argument that they had the burden of proving that a reduction in damages was warranted.

*See also Tennessee ex rel. Chapdelaine v. Torrence*, 532 S.W.2d 542, 550 (Tenn. 1975) (stating that

defendants have the burden to prove the mitigation of damages). They did not meet this burden.

The defendants provided evidence that they paid $273,700 to several of Steve Morriss's companies,

J.A. at 293, and that those companies and others were later transferred to Tareco, J.A. at 199-202.

They never proved, however, that Tareco actually received the $273,700 that they transferred to the

companies. For example, there was no evidence that the money stayed within the companies until

the companies were transferred to Tareco. On the contrary, the evidence shows that Tareco did not

receive a substantial portion of the money because the combined value of all the companies,

including those that were paid the $273,700, was only $100,000 at the time they were transferred

to Tareco. J.A. at 197. The defendants thus failed to fulfill their burden of proving the extent to

which their transfer benefitted Tareco, and the district court properly declined to reduce their

liability.

## C.     Reduction for Living Expenses

Karen Morriss's argument—that she was entitled to a reduction in liability for the amounts

she spent on living expenses—fails for the same reason as the defendants' argument that their

liability should have been reduced for amounts transferred to Steve Morriss's companies. Nothing

in the Uniform Act suggests that, once a person is found to be a transferee or to have participated

in a conspiracy to engage in a fraudulent transfer of assets, that person's liability is governed by

what she spends the proceeds on. Although the district court could have equitably reduced Karen

Morriss's liability, as the court did in *Dahar*, 318 B.R. at 27-28, if it had found that she paid for

family or living expenses that Steve Morriss would have otherwise paid if the fraudulent transfers

had not occurred, Karen Morriss did not meet her burden of proving that she was entitled to a

reduction. She did not show what family and living expenses she paid that would otherwise have

been paid by Steve Morriss.

The cases on which Karen Morriss relies provide no support for her argument. In *Hamilton*

*v. Zimmerman*, for example, the court stated that a debtor cannot be held liable to creditors for the

expenses incurred in supporting his family. 37 Tenn. (5 Sneed) 39, 1857 WL 2547, at *3 (Tenn.

1857). The court went on to hold, however, that the debtor could not use his family expenses as a

pretext for fraud. *Id. Hamilton* is thus consistent with the district court's ruling in this case. Once

the district court ruled that all of the conveyances were made "to hinder, delay, or defraud" creditors,

§ 66-3-305, the defendants became liable regardless of what they *later* decided to spend the money

on. The district court thus properly found that Karen Morriss was not entitled to a reduction in

liability for the portion of the fraudulently conveyed money that she spent on family and living

expenses.

**D.      Joint and Several Liability for Karen Morriss**

Karen Morriss also argues, without providing any support, that "[e]ven if [the amount she

spent] was held to be a fraudulent transfer, her liability should not exceed that amount which

- 10 -

represents checks she received, or checks which she wrote to others, drawn on the Amy Morriss account." This argument is frivolous. It is well settled in Tennessee that conspirators are jointly and severally liable, and it makes no difference how the "booty" is distributed. *Brumley v. Chattanooga Speedway & Motordrome Co.*, 198 S.W. 775, 776-77 (Tenn. 1917); *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002) ("Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme."). Because the district court found Karen Morriss to have conspired in the fraudulent transfers, she is jointly and severally liable for the entire judgment.

### E.    Equitable Defenses

The equitable doctrine of laches does not bar Tareco's recovery because the evidence demonstrates that Tareco could not have known of Steve Morriss's and the defendants' use of the Amy Morriss account until after the fraudulent conveyances took place.[3,4] Although laches has been used under Tennessee law to bar the recovery of creditors that knew of fraud but delayed in suing, *see Carrier v. Dixon*, 218 S.W. 395, 396 (Tenn. 1919); *see also* Tenn. Code Ann. § 66-3-311

---

[3]The defendants also raise the defense of equitable estoppel, but they do not allege that Tareco engaged in any wrongdoing. *See Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004) (stating that estoppel requires proof of, among other things, "false representation or concealment of material facts"). Their estoppel theory therefore fails as a matter of law.

[4]Additionally, the defendants likely waived any equitable defense. The defendants did not raise laches or estoppel in their answer, J.A. at 69-71, nor do the defenses show up in Karen Morriss's counterclaim and third-party complaint, J.A. at 16-45. An affirmative defense must be pled under Federal Rule of Civil Procedure 8(c); if raised for the first time on appeal the defense is waived. *Brunet v. City of Columbus*, 1 F.3d 390, 402-03 (6th Cir. 1993).

(providing that "the principles of law and equity, including . . . laches . . . supplement [the Uniform Act's] provisions"), the defendants' defense fails because Tareco was not incorporated until 1999, years after almost all of the fraudulent conveyances and subsequent spending by the defendants. Tareco could not have known of the conveyances because it did not exist at the time.

The defendants' attempt to impute the knowledge of Tareco's agents to Tareco is not supported by evidence or case law. The only person connected with Tareco who could have known of the conveyances prior to Tareco's incorporation was Robert Geringer. Geringer received a check from the Amy Morriss account in 1995, and his law firm made several wire transfers into the account in 1994 and 1995. But, while Geringer was Tareco's Rule 30(b)(6) representative at trial, there is no evidence that Geringer had ownership or managerial control over Tareco, such that he could perhaps be argued to have been an alter ego of Tareco. Instead, it appears that Geringer was simply Tareco's agent. The defendants offer no support for the proposition that an agent's knowledge, acquired before the agent began working for the principal, can be imputed to the principal for purposes of a laches defense. Therefore, the defendants' laches defense fails.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.