NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1009n.06

No. 12-6435

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

ARVEST BANK,

    Plaintiff-Appellee,

v.

PRESTON E. BYRD; DONETTE L. BYRD,

    Defendants-Appellants,

and

PRESTON E. BYRD IRREVOCABLE
INSURANCE TRUST,

    Defendant.

**FILED**
Dec 03, 2013
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

---

Before: DAUGHTREY, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. A jury found Preston Byrd liable to Arvest Bank for diverting funds meant for the development of a Memphis low-and-moderate income housing project for his personal use, and his wife liable for retaining the benefits of Preston's fraud. The Byrds now appeal and we affirm.

I.

Horizon Holding, a development company, sought financing to construct a low-and-moderate-income housing project. Unbeknownst to Arvest Bank, the project's primary lender,

Preston and his wife Donette, through their company Horizon Financial Group, owned a majority interest in Horizon Holding. Arvest loaned over $8 million for the project. Arvest required as a condition to agreeing to the transaction that the owners of Horizon Holding execute an agreement guaranteeing the project's completion and payment of the development costs. At closing, Preston presented himself as only a manager of Horizon Holding, and not an owner. Because Arvest did not know Preston owned Horizon Holding, Arvest neither required his signature as an individual guarantor nor conducted the usual background check. Had it done so, Arvest would have discovered Preston's prior wire-fraud conviction. And discovery of that conviction, Arvest maintains, would have disqualified Preston from borrowing.

Preston diverted over $1 million from the project's bank account to a separate Horizon Holding account. He also charged nearly $350,000 on his American Express card for high-end personal items and transferred from Horizon Holding to Donette, for nominal consideration, two Mercedes-Benz sedans with a combined value of $187,000 as well as company real estate valued at $472,000. Eventually, funding shortfalls prompted the project's contractor to halt construction.

Arvest sued Preston and Donette Byrd, alleging fraudulent diversion of the funds. A jury returned a verdict in favor of Arvest for more than $6 million in compensatory and punitive damages, finding Preston liable for conversion, fraud in the inducement, unjust enrichment, and fraudulent conveyance. The jury found Donette liable for retaining the benefits of one or more fraudulent conveyances.

II.

On appeal, the Byrds bring four arguments. Preston argues that the district court erred by: (1) admitting evidence of his 2003 conviction for wire fraud; (2) excluding draft guaranty agreements from evidence; and (3) improperly bifurcating the trial. Donette argues that the district court erred in denying her motion for a new trial.

A. Evidence of Preston Byrd's Conviction for Wire Fraud

First, Preston challenges as irrelevant and prejudicial the district court's admission of evidence detailing his wire-fraud conviction in the face of his admitting its existence. He also contests as unduly prejudicial the manner Arvest employed to emphasize the conviction, including having the court admit as exhibits copies of his indictment, plea agreement, and judgment of conviction.

We first examine de novo whether the district court admitted the conviction evidence for a permissible purpose under Federal Rule of Evidence 404(b), which allows evidence of a defendant's prior crime to prove a defendant's "motive" or "intent." *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). The contested evidence demonstrated motive in that Preston previously defrauded a company of more than $70,000 by submitting false demand drafts and invoices—a crime he would want to conceal from potential lenders. (*See* R. 203, Order Denying Mots. for New Trial at 9 (noting Arvest's evidence that had it learned of the conviction, no loan would have issued).) Because hiding

his criminal record motivated Preston's lie about his ownership of Horizon Holdings, it supported the intent-to-induce-reliance-on-a-false-material-statement element of Arvest's fraudulent-inducement claim. *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000).

The district court also properly admitted the conviction evidence to impeach Preston's credibility under Federal Rule of Evidence 609. Preston testified in his own defense and his conviction under 18 U.S.C. § 1343 involved a "scheme or artifice to defraud" and/or the use of "false or fraudulent pretenses, representations, or promises." *See* Fed. R. Evid. 609(a)(2) (allowing courts to admit evidence of a conviction for a crime involving "a dishonest act or false statement").

Next, we review for abuse of discretion the district court's Rule 403 finding that the evidence's probative value was not "substantially outweighed" by unfair prejudice, confusion of issues, or undue delay. *Clay*, 667 F.3d at 693. We assess whether we are left with a "definite and firm conviction that the trial court committed a clear error of judgment." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006). Here, though Preston urges the view that with his admission of the conviction, Arvest's approach at trial amounted to classically prejudicial "piling on," we see it differently. Each trial exhibit had probative value—the indictment, plea agreement, and judgment of conviction detailed the criminal events and illustrated the seriousness of the prior crime.

Immediately after admitting these exhibits, the district court limited any unfair prejudice by delivering explicit instructions to the jurors, telling them that the evidence could be used to evaluate

(1) the credibility of Preston's testimony; and (2) whether Preston concealed his conviction to obtain money from Arvest. Yet the court cautioned the jury to "decide this case on its merits," explaining that "just because Mr. Byrd may have been convicted of a felony does not mean it's more likely than not that he did in this case what Arvest Bank says he did." We generally presume juries follow instructions, *see, e.g.*, *Washington v. Hofbauer*, 228 F.3d 689, 705 (6th Cir. 2000), and Preston fails to argue grounds to rebut this presumption.

Preston further highlights as impermissible Arvest's references to his conviction during its opening and closing statement. He points to Arvest's statements in its opening (1) suggesting that he had a "history of dishonesty," and (2) questioning the ownership issues regarding Horizon Financial because "he is a felon." But both statements, in context, appropriately refer to admissible evidence of his concealed fraud conviction. Further, Arvest explained to the jury the relevance of Preston's conviction—his motive to conceal his involvement because "the people who provide the financing [for] multi-million dollar[] [projects] are . . . reluctant to deal with [someone with his criminal past]." Arvest's counsel could properly link the felony to the concealed ownership that affected lender confidence.

So too with Arvest's closing argument. Arvest urged the jury to "consider in assessing [Preston's] credibility his prior guilty plea" and posited that unless Preston concealed his conviction, the "transaction never would have occurred" as Arvest "would have steered way clear of somebody who has done a calculated theft of funds." Although Arvest's statement that "[he] show[ed] the

same kind of calculation [and] planning to get hold of money that had gotten him into trouble before," may border on impermissible character argument, it also speaks to intent. *See* Fed. R. Evid. 404(b), 609(b).  In sum, the district court did not abuse its discretion.

B. Exclusion of the Draft Agreements

Next, Preston argues that the trial court abused its discretion by excluding unsigned agreement drafts showing Preston as guarantor of Horizon Holding's obligations.  According to Preston, these documents supported his defense that Arvest knew of his conviction but proceeded with the deal anyway.  He maintains that the court should have allowed him to show the jury the drafts as proof that Arvest initially requested that he sign as a guarantor, then ran a background check, and after learning of his conviction, nevertheless decided to proceed with the loan, but used different guarantors.

Yet, no foundation existed for this evidence, with Arvest denying preparing the drafts, and Preston failing to explain how these drafts show that Arvest knew of his conviction.  Admission of the drafts could only have invited the jury to speculate, and the district court did not abuse its discretion in excluding them.  *See United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004).  Had Preston offered evidence at trial supporting his claim that Beatty knew of his conviction and changed the agreement as a result, we might view the matter differently.  But he did not.

C. Bifurcation

Next, Preston argues that the district court failed to follow Tennessee law when it bifurcated the trial's liability and punitive damages phases without providing a separate hearing on the punitive damages question. Preston, however, initially asked the court *not* to bifurcate at all. And, after the court did so sua sponte, he objected to neither the bifurcation nor the jury instructions. The district court thus properly found this issue to have been waived. *See Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 424 (5th Cir. 1990) (declining to review bifurcation issue because of the party's failure to object); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201–02 (8th Cir. 1990) (same); *see also Clarksville-Montgomery Cnty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1006 (6th Cir. 1991) (noting courts bypassing review of jury instructions challenged for the first time on appeal).

Regardless, we discern no harm to Preston. *See* Fed. R. Civ. P. 61 (stating that harmless errors should not disturb a court's judgment); *see also McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Preston complains that the jury prematurely decided the amount of punitive damages by listing the award with its verdict during the liability phase. But the district court corrected the premature verdict, instructing the jury to use the same standards with regard to awarding punitive damages as Preston sought in proposed punitive damages instructions. He neither specifies what evidence he would have offered in a post-verdict punitive-damages hearing, nor does he appeal the sufficiency of the evidence underlying the jury's punitive damages award.

D. Donette Byrd's Motion for New Trial

Finally, Donette Byrd argues that the district court erred in denying her Rule 59 new-trial motion. We review the district court's denial for an abuse of discretion, *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 323 (6th Cir. 2007), looking to whether "a jury has reached a seriously erroneous result as evidenced by[] (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair . . . in some fashion," *Mike's Train House*, 472 F.3d at 405 (internal quotation marks omitted).

First, Donette challenges whether the district court applied the correct Rule 59 standard in denying her motion. The district court applied the proper standard, as it acknowledged that it should grant a motion for a new trial if the jury reached a "seriously erroneous result as evidenced by . . . the verdict being against the weight of the evidence." The court found the verdict not "contrary to the weight of the evidence or contrary to law." The court's citation of *Wayman v. Metropolitan Government of Nashville*, 446 F. App'x 765, 766 (6th Cir. 2011), Donette argues, discloses that it actually used a clear-error standard. Citing *Wayman*, however, supports the court's conclusion that Donette failed to show *either* a legal error or a verdict contrary to the weight of the evidence. *Cf. Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) ("[N]ew trials are not to be granted on the grounds that the verdict was against the weight of the evidence unless that verdict was unreasonable.") (internal quotation marks omitted).

Second, Donette presses that insufficient evidence supported the jury's retention-of-benefits finding. Pointing to her testimony at trial, she argues that she did not "ratify" any fraudulent conveyance. She does not explain, however, why the jury's verdict required a finding of ratification. The trial court instructed the jury—without objection from Donette—to determine whether she "accepted or retained the benefits of one or more fraudulent conveyances," and the jury found that she did.

The district court properly found that ample evidence showed Donette accepted or retained the benefits of fraudulent transactions. Arvest presented title transfers from Preston to Donette of two Mercedes-Benz luxury sedans. The jury also heard testimony (with exhibits) confirming the transfer of company real estate worth $472,000 from Horizon Holding to Donette for nominal consideration. After she discovered that Preston transferred the car titles to her, Donette continued to use these vehicles even though she knew that her husband's housing project was in trouble. Further, the real estate transfer took place after Donette was served with a complaint from another lawsuit alerting her to Preston's fraudulent conveyance of the vehicles.

Though not entirely clear, Donette contests her liability by asserting that she had "done nothing to induce Arvest Bank or any other entity to act to its prejudice." Indeed, the jury found Donette not liable for fraud-in-the-inducement. Yet, she makes no argument that, under Tennessee law, a wrongful-retention-of-assets claim requires affirmative acts demonstrating the transferee's intent to defraud. From our review, it appears that Tennessee law holds otherwise. *Tareco Props.,*

*Inc. v. Morriss*, 196 F. App'x 358, 362 (6th Cir. 2006) (collecting authority and finding that the plaintiff need not show scienter as to the transferee to support a fraudulent conveyance claim); *cf. Bowlin v. Comm'r*, 273 F.2d 610, 611 (6th Cir.1960) (per curiam) (holding that a wife's receipt of money from her insolvent husband, alone, rendered her liable as a transferee under Tennessee fraudulent conveyance law).

In sum, on this record we cannot say that the jury reached a "seriously erroneous result" or that we are left with the "definite and firm conviction that the trial court committed a clear error of judgment" in denying Donette's motion. *Mike's Train House*, 472 F.3d at 405.

III.

For these reasons, we AFFIRM.